SHEILA CORREIA & others[1] vs. DEPARTMENT OF PUBLIC
WELFARE & another.[2]

Suffolk. October 6, 1992. - January 13, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Injunction. Practice, Civil*, Interlocutory appeal, Judicial discretion. *Public
Welfare*, Emergency aid for elderly and disabled residents and children,
Department of Public Welfare. *Administrative Law*, Agency's interpre-
tation of statute. *Regulation. Due Process of Law*, Notice.

A judge did not err in granting a request, by applicants for public assis-
tance, for a preliminary injunction ordering the Department of Public
Welfare to follow certain procedures in the implementation of its pro-
gram of emergency aid for elderly and disabled residents and children
in accordance with G. L. c. 117A, § 1, where he did not abuse his
discretion in concluding that the applicants were likely to succeed in
showing that the process used by the department to verify their disabili-
ties did not carry out the legislative mandate requiring the program be
administered on a fair, just, and equitable basis; that the department
failed to provide the applicants with sufficient assistance throughout the
application process; and that the notices sent to applicants who were
denied assistance prior to disability determinations by the department's
"medical review team" (MRT) were legally inadequate; however, with
respect to the significantly more detailed notices sent to applicants
whose claims were denied after review by the MRT, the judge erred in
concluding that the applicants were likely to succeed in showing those
notices to be legally inadequate. [163-168]

This court concluded that, in the circumstances, a judge exceeded his au-
thority in fashioning relief under a preliminary injunction that ordered
the Department of Public Welfare to provide emergency aid for elderly
and disabled residents and children in accordance with G. L. c. 117A,
§ 1, to all applicants who had submitted a medical report completed by
a competent medical authority and attesting to the applicant's dis-
ability, and required that such benefits not be terminated until the ap-

---

[1]Rosaura Ayala, Frederick Copeland, Aron Jakob Altshuler, Paul G.
Atwood, Genoveva Nieves, Carmen Gonzalez, and all others similarly
situated, and the Massachusetts Coalition for the Homeless.

[2]Commissioner of Public Welfare.

plicant had been physically examined by another physician; consequently, the court remanded the case to the Superior Court with instructions to limit the injunction's scope. [168-171]


CIVIL ACTION commenced in the Superior Court Department on April 22, 1992.

A motion for preliminary injunctive relief was heard by *Patrick J. King*, J.

On transfer of the action to the Supreme Judicial Court for the county of Suffolk, the question of the propriety of preliminary injunctive relief was reported by *Lynch*, J.

*Pierce O. Cray*, Assistant Attorney General (*Ardith A. Wieworka* with him) for the defendants.

*Ronald B. Eskin* (*James Breslauer* with him) for the plaintiffs.

LIACOS, C.J. We are called on to review a preliminary injunction issued by a judge of the Superior Court. The injunction orders the Department of Public Welfare (department) to follow certain procedures in the implementation of one of its programs. After the order was issued, the department filed a notice of appeal and moved to stay the preliminary injunction pending the appeal. The Superior Court judge denied the motion, and the department filed motions in the Supreme Judicial Court for Suffolk County seeking an immediate transfer of its interlocutory appeal to this court, and a stay of the preliminary injunction pending appeal. A single justice of this court reserved and reported the matter to the full court, and stayed the injunction pending our decision. We hold that the Superior Court judge did not abuse his discretion in ruling that the plaintiffs were entitled to preliminary injunctive relief, but believe that the relief ordered by the judge sweeps too broadly. We thus order the case remanded to the Superior Court judge with instructions to limit the injunction's scope. In so doing, the judge must consider the impact of certain factual information which has been presented to correct the record since the preliminary injunction was issued. We summarize the facts as found by the

judge below.[3] On October 10, 1991, the Legislature enacted
St. 1991, c. 255, §2, replacing the former General Relief
Program (GR) with a public assistance program of emer-
gency aid for elderly and disabled residents and children
(EAEDC). G. L. c. 117A, § 1 (Cum. Supp. 1991). Eight
days after the statute was enacted, the department promul-
gated extensive regulations to implement the program. These
regulations also set forth the department's eligibility require-
ments for public assistance. 106 Code Mass. Regs.
§§ 317.000 - 323.710 (1992). Perhaps the most significant
change from GR was the transfer of responsibility for the
disability determination from the applicant's physician to the
department and its so-called "medical review team" (MRT),
discussed *infra.*

The regulations provide that to qualify for disability bene-
fits, an applicant must show that he or she: (A) is under age
sixty-five; (B) has a disability expected to last sixty days or
more; (C) meets the department's medical standards for dis-
ability[4]; (D) has a disability verified by a competent medical
authority[5] on a form prescribed by the department; (E) has

---

[3]We recognize that, if an "order was predicated solely on documentary
evidence [as it was here,] we may draw our own conclusions from the rec-
ord." *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 616 (1980).
Except for a few minor points, of limited consequence, we agree with the
judge's findings.

[4]The regulations present three alternative routes for establishing a disa-
bility: (1) by meeting the department's own medical standards, which are
listed at 106 Code Mass. Regs. § 320.210 (1992); (2) by meeting the re-
quirements for a "Listed Impairment," pursuant to the Federal regulations
governing the Supplemental Security Income program (SSI); or (3) by
satisfying the department's standards regarding "vocational factors," as
described at 106 Code Mass. Regs. § 320.220 (1992).

[5]"Competent medical authority" is defined by 106 Code Mass. Regs.
§ 318.500(F) as "a physician or psychiatrist licensed by the Common-
wealth of Massachusetts or an out-of-state physician or psychiatrist who is
enrolled in the Massachusetts Medical Assistance program as a provider,
or a physician or psychiatrist from a Veterans Administration Hospital or
clinic, or a physician or psychiatrist from the Massachusetts Departments
of Public Health or Mental Health facility(ies)."
The defendants take issue with the trial judge's characterization of these
authorities as "approved by the department," apparently because "ap-
proval" implies more departmental involvement than actually exists. It is

had his or her medical records reviewed by the MRT; (F) has applied for Federal assistance through the Supplemental Security Income program; and (G) periodically resubmits verification as required by the department. See 106 Code Mass. Regs. § 320.000 (1992).

The applicant is primarily responsible for submitting verification of his or her disability. 106 Code Mass. Regs. § 318.410 (1992). This verification includes a "medical report," a standardized form provided by the department, that has been completed by a competent medical authority (physician). The department requires that the medical report contain specific, detailed information linking the applicant's condition with the medical standards. Some physicians have found the medical report form difficult to complete either because they have not had the medical standards made available to them, or because they were unaware that highly specific clinical findings, utilizing particular terminology, were required to be presented on the form.

Once an applicant submits a medical report to his or her department caseworker, completed by the applicant's physician and attesting to his or her disabled condition, the department follows one of two courses. In cases where the caseworker finds the medical report facially incomplete, the department denies the application without further review. In such instances, the applicant receives a written notice stating only that the applicant has "failed to provide information necessary to determine eligibility in the EAEDC program". In cases where the medical report is facially complete, the department forwards the medical report to the MRT for review. A private company under contract with the department, serves as the MRT.[6] The MRT reviews the documents to determine whether the applicant meets the medical standards. Prior to April 1, 1992, this review was purely a paper

clear from his findings that the judge's word choice indicated only that physicians completing reports satisfy the requirements of the above regulation.

[6]The MRT is composed of registered nurses, vocational specialists, and physicians.

review of the medical report submitted by the applicant. On April 1, 1992, the contract between the department and MRT was amended to provide additional compensation so that MRT may contact the applicant's physician, if it has reason to believe that the physician could provide information that could resolve a questionable aspect of the application.

The MRT has denied a substantial number of applications based on technical deficiencies in the application, albeit not related to the applicant's medical condition. For example, one applicant was denied because her physician had neglected to fill in a blank requesting the date of her most recent examination; she was not informed of this reason. The record is replete with other instances of denials for technical reasons, of which the applicant or the physician were not made aware.

When the MRT denies an application, it sends the applicant a notice of denial. Prior to March, 1992, this notice simply informed the applicant that he or she had failed to meet the department's medical standards. Since March, 1992, the MRT has sent a more detailed notice, consisting of a standardized form on which specific medical reasons for the denial have been checked off and which indicated the information, if any, that would aid in verifying the disability.

The plaintiffs filed suit against the department seeking declaratory and injunctive relief on April 22, 1992.[7] Their complaint alleged that they were entitled to relief because, inter alia, the department's failure to provide adequate assistance throughout the application process results in viable claims being denied for arbitrary technical reasons, and thereby vio-

---

[7]The trial judge certified the plaintiffs as a class pursuant to Mass. R. Civ. P. 23, 365 Mass. 767 (1974). The class is composed of persons who have been terminated from, denied or will be denied EAEDC benefits on the ground that they are not disabled or have not provided proof of their disabilities, and who either (a) need assistance in proving their disabilities, or (b) have impairments as severe as those listed in the defendant's criteria, or (c) are disabled in light of age, education and work experience, or (d) received inadequate denial or termination notices.

lates G. L. c. 18, § 2 (B) (1990 ed.), which describes the department's obligations in the implementation of its programs, and 106 Code Mass. Regs. § 319.310(B), which outlines the responsibilities of department workers in assisting applicants. The plaintiffs further alleged that the denial notices sent by the department to applicants denied prior to an MRT review and to applicants denied after an MRT review do not comport with due process requirements.

On May 13, 1992, the plaintiffs moved for a preliminary injunction. Their request sought an order: (1) enjoining the department from terminating or denying benefits when a claimant's record was incomplete, unless and until sufficient evidence in the record established the absence of a disability; (2) ordering the department to assist applicants in obtaining the necessary verification of their disabilities; (3) ordering the department to provide denial notices describing the reasons for denial; and (4) requiring the department to reinstate the claims of all applicants whose benefits were denied due to a failure to meet the department's medical standards or for failing to provide sufficient verification to determine disability, and to reevaluate all denied claims using legally permissible standards.[8]

After three hearings on the matter, the judge issued a preliminary injunction, the relevant portions of which are set forth below.[9] The department argues that the injunction is overly broad and exceeded the scope of the judge's authority.

---

[8]The plaintiffs' motion also requested that the court order the department to submit plans to the court and establish regulations, implementing the changes to the program that the plaintiffs sought in their request for the injunction.

[9]The preliminary injunction reads, in pertinent part:

"(a) The defendants are preliminarily enjoined from failing to approve the claims of all EAEDC disability applicants who present a medical form to the defendants, which is completed by a physician approved by the Defendants, stating that the applicant is disabled based on the State's medical disability standards or the applicable SSI Listing of Impairments;

"(b) The defendants are preliminarily enjoined from failing to approve all applications for EAEDC disability benefits for applicants who have submitted medical forms signed by a [department approved] physician finding a disability under the state's medical standards or the applicable

We review the judge's order of preliminary injunctive relief to determine whether the judge abused his discretion. See *O'Sullivan* v. *Secretary of Human Servs.*, 402 Mass. 190, 197 (1988). Where, as here, an injunction arguably affects a public agency's exercise of its discretionary functions, courts must tread lightly in ordering action contrary to the agency's interpretation of its own regulations. See *Matter of McKnight*, 406 Mass. 787, 792 (1990). When an agency's implementation of its regulations violates the law, however, it is entirely appropriate for a court to order relief. See *Attorney Gen.* v. *Sheriff of Suffolk County*, 394 Mass. 624, 631 (1985).

*Plaintiffs' eligibility for preliminary injunctive relief.* As an initial matter, we must consider whether the plaintiffs are entitled to preliminary injunctive relief. To be entitled to such relief, the plaintiffs must show that they are likely to succeed at a trial on the merits, that they will suffer irreparable injury if the injunctive relief is not granted, and that the balance between the combination of these two factors and any harm to the defendant or to the public interest engendered by the relief tips in favor of the plaintiffs. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616-617 (1980). No argument has been made to us regarding the

---

SSI Listing of Impairments, but whose applications have been denied and have an appeal from said denial pending as of the date of this order.

"(c) The defendants are preliminarily enjoined from terminating any EAEDC disability benefits where a recipient has been found to be disabled by a [department approved] physician unless: there is medical evidence from an examining physician concluding that the recipient does not meet the applicable State's medical standards or applicable SSI Listing of Impairments; and the recipient is not otherwise entitled to benefits when their impairment(s) are considered in light of their age, education and work experience; and

"(d) The defendants are preliminarily enjoined from failing to give the notice attached as Appendix 'A', hereto, or a notice substantially similar thereto, to all individuals whose applications for EAEDC disability benefits were denied, or whose EAEDC disability benefits were terminated, since October 1, 1991. This includes those whose applications were denied by the defendants both prior to or after the Medical Review Team reviewed their cases."

judge's finding of harm to plaintiffs, and we therefore concentrate our attention on his finding of likelihood of success.

The department objects to the rulings of the judge that the plaintiffs were likely to succeed in establishing, specifically: (1) the department's failure to provide adequate assistance to applicants; and (2) the inadequacy of the notices provided to applicants whose claims are denied. The department misapprehends the judge's rulings. The judge found that the plaintiffs are likely to succeed in proving that the entire process employed by the department was "inherently unfair, unjust and inequitable," and thus in violation of G. L. c. 18, § 2 (B)(d) (1990 ed.), which requires that the department provide assistance "on a fair, just and equitable basis." While the judge pointed to the lack of assistance that department workers provide to applicants, his conclusion appears to be based on his over-all perception of the process as one in which claims are often denied for technical deficiencies in the application, unknown and unknowable to the applicant.[10] Although the department has broad discretion to implement the program as it chooses, we agree with the judge that the widespread denials for arbitrary and technical reasons rise to the level of unreasonableness. Cf. *Kraft* v. *Commissioner of Pub. Welfare*, 398 Mass. 357, 369-371 (1986) (program resulting in less net aid to SSI recipients not so unreasonable as to be unfair, unjust, and inequitable).

We agree also with the judge that the plaintiffs have established a likelihood of success on the issue of the department's lack of assistance, and we turn now to that subject. The department devotes substantial attention in its brief to whether the department owes applicants any duty to assist in verifying their disabilities. At least two sections in the regulations promulgated by the department speak to the burden of providing adequate verification of disabilities. Section 318.410 of 106 Code Mass. Regs. provides: "The applicant/

---

[10]Indeed, the section of the judge's memorandum and order which discusses the department's failure to assist claimants adequately is entitled "Disability Verification," not "Providing Assistance."

recipient has the primary responsibility for providing the verifications required to establish eligibility for EAEDC. The [department case]worker is responsible for explaining the verification process to the applicant/recipient, identifying the specific verifications that must be submitted and all alternative verifications which establish the eligibility factor, and assisting in obtaining required verification(s) when the worker is aware that the applicant/recipient is unable to obtain the verification." In addition, 106 Code Mass. Regs. § 319.310(B) states that: "The worker is responsible for . . . assisting in obtaining required verification(s) . . . ." The department claims that it interprets these regulations to require only that a caseworker provide reasonable assistance to applicants, and that reasonable assistance includes such things as helping to obtain a medical report form, or helping to find a physician to examine the applicant. The department claims that assistance in developing the clinical medical data necessary to verify the applicant's disability and withstand the MRT's review is not required by the regulations.

We agree with the department that "[a] state administrative agency . . . has considerable leeway in interpreting a statute it is charged with enforcing." *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595 (1992), quoting A. Cella, Administrative Law and Practice § 747 (1986). This deference, however, does not extend to an unreasonable interpretation. See *Matter of McKnight*, 406 Mass. 787, 807-808 (1990) (Liacos, C.J., dissenting), and cases cited. This court has overridden agency interpretations where, for example, an agency is found to be acting in bad faith, or contrary to its statutory directive. See *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703 (1980); *Blaney* v. *Commissioner of Correction*, 374 Mass. 337 (1978).

The judge below did not abuse his discretion in concluding that the plaintiffs were likely to succeed in proving that the department's interpretation of its regulations, which limits the assistance its workers must provide to applicants in developing their applications, is unreasonable. The regulations require that the department workers assist applicants in ob-

taining necessary verifications. 106 Code Mass. Regs. § 319.310. Certainly a basic component of this assistance would be to help the applicant understand what information the department requires. The judge found that the department has denied numerous claims at the MRT stage because the applicant's physician failed to fill out the medical report perfectly or failed to use certain required words to describe the applicant's condition, and that the department did not assist applicants by alerting them to the need for such rigid compliance to prevent denials of claims. The judge was warranted in concluding that the regulations require this minimum amount of assistance.

The judge below also ruled that the plaintiffs are likely to succeed at trial in their claim that the department's denial notices do not comport with due process requirements. As we explain below, we agree with the judge that the notices sent to applicants whose claims are denied prior to an MRT review are legally inadequate. However, we believe that the judge was mistaken in holding that the notices sent to applicants after an MRT review violate due process requirements.

The pre-MRT denial notices, which the department sends when an application is incomplete on its face, state: "You have failed to provide information necessary to determine eligibility in the EAEDC program." The department submitted evidence indicating that department workers orally supplement this written notice, but the judge found, and the record gives us no reason to disagree, that such an oral communication is not standard department procedure nor does it occur with regularity.[11] This notice violates principles of due process because it does not inform applicants adequately of the reason for denial or termination. See *Goldberg* v. *Kelly*, 397 U.S. 254, 267-268 (1970). The judge did not abuse his discretion in holding that the plaintiffs were likely to succeed in that portion of their claim.

---

[11]The department refers us to no written regulation or written policy directive requiring such oral assistance.

The notices sent to applicants whose claims are denied after a review by the MRT, in comparison, are significantly more detailed than the denial notices sent prior to an MRT review, and we conclude that the judge erred in declaring them legally inadequate. The notice is a two-page standardized form on which a member of the MRT has indicated the specific medical issues for which the applicant has failed to provide sufficient information and identifies the medical tests or procedures necessary to satisfy the department's standards. The notice informs the applicant that he or she "may wish to show this letter to the doctor who completed your medical report." The plaintiffs object to this notice on the ground that the technical medical language it contains makes it impossible to be understood by the applicant or anyone who is not a physician. We agree that the specific information contained in the notice is highly technical and probably could not be understood by a lay person. However, the department's regulations require the MRT's decision to be based on highly specific medical findings, and, if the MRT denies an application because it lacks a piece of medical information, we see no other manner of informing the applicant of the problem except by making reference to the specific medical information needed. Given this fact, we conclude that the notice is adequate because it describes the reason for denial in detail and puts the applicant on notice that further inquiry may be necessary. See *DaLomba* v. *Director of the Div. of Employment Sec.*, 369 Mass. 92, 98-99 (1975) ("notice is constitutionally sufficient as to a person under a disability if [1] it would put a reasonable person on notice that inquiry is required, [2] further inquiry would reveal the facts necessary to understand the nature of the proceeding and the opportunity to be heard, and [3] the party's disability does not render him incapable of understanding the need for such inquiry," quoting *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 [1975]). Because the notice adequately informs

the applicant of the reason for denial,[12] we rule that the judge erred in holding that the plaintiffs demonstrated a likelihood of success on this issue.

*Scope of the injunction.* We consider now whether the judge below exceeded his authority in fashioning the relief. As discussed above, we believe that the judge did not abuse his discretion in ruling that: (1) the plaintiffs were likely to succeed in showing that the verification process utilized by the department fails to carry out the legislative mandate that the program be administered on a fair, just, and equitable basis; (2) the department fails to provide applicants with sufficient assistance throughout the application process; and (3) the notices sent to applicants who are denied prior to an MRT review are inadequate. We conclude, however, that the injunction sweeps too broadly and is not addressed closely enough to the areas where the plaintiffs are likely to succeed.

In essence, the injunction has two major components: (1) the order that the department provide EAEDC benefits to all applicants who have submitted a medical report completed by a competent medical authority and attesting to the applicant's disability; and (2) the requirement that such benefits not be terminated until the applicant has been physically examined by another physician. During oral argument, counsel for the department indicated that, despite its initial objection to the first aspect of the order, the order was not now objectionable because the department's policy manual indicated that an applicant should receive temporary benefits after submitting a medical report stating that the applicant was disabled. An alleged copying error in the preparation of the record below had caused the omission of a page of the department's policy manual, and this page apparently directs the department's workers to provide EAEDC benefits as soon as an applicant submits a facially complete medical form

---

[12]Indeed, even if the notices were written in a manner that a lay person could understand, and all medical terms were defined in easily comprehensible words, it is likely that the applicant still would have to consult a physician to determine whether her particular medical condition satisfies the department's standards.

from his or her physician, attesting to the disability. While this document was presented to us as a correction of a copying error, the information that it purports to contain[13] is critical to an evaluation of the proper scope of injunctive relief. The record is devoid of any reference to this practice being the department's policy. Moreover, the record indicates that, if this were the policy, the department has not been following it. Accordingly, we remand to the judge this aspect of his order, with instructions to consider this new evidence. We must emphasize that, if the procedure outlined on this document is in fact the department's policy, then the judge did no more than order the department to comply with it, and his order is not overbroad. See *Matter of McKnight*, 406 Mass. 787, 792 (1990); *Attorney Gen.* v. *Sheriff of Suffolk County*, 394 Mass. 624, 629-630 (1985).

We next address the second major aspect of the injunction: The manner in which an applicant may be denied or terminated once he or she has submitted a medical report from his or her physician. The department objects to the judge's order on the ground that it substitutes a procedure entirely different from the one outlined in the regulations and effectively supplants the MRT process. This aspect of the order infringes too drastically on the department's authority to administer its program as it chooses. While the plaintiffs presented ample evidence to support the judge's ruling that the verification process is illegal and inequitable, we do not believe that this evidence indicated that in no circumstances could the MRT system function equitably. This is especially so in light of the fact that the regulations promulgated by the department must be given great deference. See *Bradley* v. *Commissioner of Mental Health*, 386 Mass. 363, 365 (1982). Given the defendant's status as a public agency, an order as specific as the one at issue here is inappropriate. See

---

[13]We say "purports to contain" because it is hardly obvious from the document itself that what the department now says it indicates is, in fact, department policy. Counsel for the defendants stated that the page, a chart, indicated that EAEDC benefits should be approved after submission of the medical report.

*Guardianship of Anthony*, 402 Mass. 723, 727 (1988); *Bradley* v. *Commissioner of Mental Health*, 386 Mass. 363, 365 (1982).

The judge should amend the injunction to address more directly the areas in which he found the plaintiffs likely to succeed. At the same time, he must allow the agency to exercise its discretion within the legal requirements.[14] To this end, and with an eye to the difficulty of crafting an order which both clearly details the illegalities that must be corrected and affords the department the discretion to make corrections as it sees fit, we offer the following suggestions. As regards his ruling that the department does not administer its plan on a fair, just, and equitable basis, the judge should allow the department an opportunity to alter its practices or policies to conform to this standard.[15] On the question of assistance, it would be appropriate for the judge to order the department to provide enough assistance to avoid the arbitrary and unreasonable denials and terminations that occur under the present system.[16] Regarding the question of inadequate notice to applicants denied prior to the MRT review, an order requiring more detailed notice is called for.

---

[14] If the department fails to rectify the problems with its policies and procedures, a more specific order, detailing particular steps to be taken, would be appropriate at that point. See *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 823 (1987).

[15] We note that the defendants claim to have submitted a plan to the judge below, which, if implemented, would cure many of the problems with the present system. We note also that the plaintiffs claim that the judge allowed the department such an opportunity and that it failed to submit an adequate revised plan before the injunction issued. In light of the significance of the issue, we leave it to the judge, on remand, to reconsider the question whether an adequate revised plan has been presented to him by the time of a hearing on remand. We feel comfortable in this suggestion because it appears that the judge already has indicated to the department that it may seek modification of the preliminary injunction.

[16] Again, the department must have discretion to implement its program, so long as it stays within the requirements of the law and its valid regulations. While the judge below might have believed (and we would be inclined to agree) that extensive assistance similar to that provided to SSI applicants by Federal workers would be the wisest method of ensuring valid disability determinations, the department may decide otherwise.

We therefore remand this case with instructions that: (1) the injunction be amended as indicated; and (2) the judge make appropriate findings on the newly submitted evidence, if any, and then order any appropriate relief.

*So ordered.*