Lopez, J.
INTRODUCTION
In this action, plaintiffs Audrey Dowell (Dowell) and Margaret Ratliff (Ratliff) were evicted from their state subsidized housing for nonpayment of rent. Also named in the suit as a plaintiff is the Massachusetts Coalition for the Homeless (MCH), a homeless advocacy organization. They have brought suit against the Department of Transitional Assistance (DTA) seeking lo enjoin the DTA’s enforcement of 106 C.M.R. §309.040 (A)(1)(c), a regulation that bars the provision of Emergency Assistance (EA) benefits, specifically in this case, temporary housing, to any party “[who] has rendered itself homeless . . . due to an eviction from public and/or subsidized housing for nonpayment of rent.” Id.
Presently before the court are the parties cross-motions for summary judgment and the plaintiffs motion for class certification pursuant to Mass.R.Civ.P. 23(a) and (b). For the reasons stated below, defendant’s motion for summary judgment is DENIED and plaintiffs’ motions for summary judgment and class certification are ALLOWED.
BACKGROUND I. Plaintiff Audrey Dowell
Plaintiff Dowell lived in a subsidized apartment at 1431 Commonwealth Avenue from 1991 until her eviction in July, 1995. She had been trying to raise two young sons with an AFDC[3] income of $539.00 per month and $182.00 in food stamps. In 1991, her share of ihe rent on her subsidized lease was $122.00 per month or 30% of her adjusted income. When she had a third child, her AFDC grant was increased to $628.00 per month and her rent was increased to $164.00 per month.
After her oldest child left the household to live with her father, Dowell’s AFDC grant was returned to $539.00 per month, but her rent was not reduced to $122.00 per month. Her rent incorrectly remained at $ 164.00 per month. Dowell fell behind in her rent early in 1995 and received a notice to quit, dated March 8, 1995, alleging that she owed $164.00. Her landlord then commenced a summary process case in Boston Housing Court alleging that Dowell owed a total of $264.00. Dowell claimed that she never received the summary process summons and complaint and she defaulted on April 14, 1995. A judgment for possession was entered for her landlord along with a judgement for $348.10, inclusive of costs.
Dowell was served by a constable with an execution and a 48 hour notice of levy. She went pro se to the Boston Housing Court to try to stop the levy and remove the default. Dowell entered into an agreement with her landlord’s attorney in which she agreed to pay $500.00 for the moving truck that was scheduled to move her possessions during the levy. She also agreed to pay all the rent she owed, totalling $337.00, and to be out of the apartment by June 30, 1995.
Dowell applied to DTA for EA emergency shelter and was denied in a notice dated July 3, 1995 because she had been evicted from subsidized housing for nonpayment of rent. Dowell then attempted to have legal counsel negotiate with her landlord to forbear from the levy because all her rent had been paid but the landlord refused to negotiate and the levy went forward. Dowell is now in EA temporary housing pursuant to court order pending the outcome of this case.
II. Plaintiff Margaret Ratliff
Plaintiff Ratliff is also a mother of two small children, four and seven years old. She receives a monthly AFDC grant of $539.00. She also receives sporadic wages of $6.68 an hour as a kitchen helper at the Winter Hall Kitchen in Somerville. In 1989, with the assistance of a voucher from the Massachusetts Rental Voucher Program (MRVP), Ratliff lived at 307 Medford Street in Somerville for the preceding two years. Her rent was $218.00 per month. Ratliff also paid an additional $100.00 in utilities.
In the two years that Ratliff was at this apartment, she fell behind on her rent twice. In December 1994 she fell behind by $109.00. With the assistance of Catholic Charities she paid the rent in full and her landlord took no action. In March of 1995, she again fell behind in her rent. Her four-year old son suffers from attention deficit disorder and due to a worsening of the condition, he had to be admitted to a day treatment program at Westwood Pembroke Center in Boston. Because Ratliff had to take him to the program at 9:00 a.m. and pick him up at 3:00 p.m., she was unable to work more than a few hours per week between March 8, 1995 and March 24, 1995. Her AFDC check was not adjusted to reflect the changes in her wages and she was unable to pay her rent for April.
At the end of March, Ratliff explained her problem to her landlord and he accepted the $80.00 which she offered towards the April rent and assured Ratliff that she could pay the rest when she had the funds. Despite this assurance, Ratliff received a notice to quit in April. At this point, she only owed $138.00 for the balance of the April rent. Through the help of the Department of Social Services (DSS) and Catholic Charities, Ratliff was able to get all the money that she needed for her rent arrearage.
Ratliff appeared in Somerville District Court on May 4, 1995 after having been served with a summons from Somerville Court. Ms. Nora Huddock, a Social Worker from DSS, accompanied Ratliff to court to help explain that Ratliff had the funds to pay the rent but she was not allowed to speak. Ratliff told the judge that she would pay the $138.00 and the May rent of $218.00 by the end of the day. The landlord refused the offer and the eviction was allowed to proceed. At the time *551 of the eviction, the total arrearage was $356.00, all of which Ratliff was ready and willing to pay.
Because of her eviction, Ratliff lost her housing voucher. In May 1995, she requested emergency shelter but the DTA refused to accept her application. She returned to the DTA in the third week of July and was told that if she was evicted for nonpayment of rent then she would not be eligible for EA benefits. Ratliff is currently staying in an EA temporary shelter pursuant to order of this court pending the outcome of this case.
DISCUSSION
I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgement as a matter of law. See Cassesso, supra at 422.
II. Invalidity of Regulation 106 CMR 309.040 A. Violates Massachusetts Statutes 1.G.L.c. 18, §2(D)
Massachusetts G.L.c. 18, §2(D) authorizes the Department of Public Welfare (DPW) to administer a joint federal-state program of emergency assistance. The statute states;
(D) Subject to appropriation, the department shall administer a program of emergency assistance to needy families with children and pregnant women with no other children, subject to and in accordance with the provisions of the Social Security Act of 1935, as defined in 42 USC 606(e), to provide benefits to avoid destitution or to provide living arrangements in a home. The commonwealth shall accept matching funds from the appropriate federal authorities for said program.
Said program of emergency assistance shall assist eligible families to prevent destitution or to provide living arrangements in the home.
The department shall promulgate rules and regulations to establish the levels of benefits available under the program and to ensure simplicity of administration in the best interest of needy recipients. Such benefits shall include, but not be limited to, the following:
(d) for the prevention of homelessness, temporary shelter as necessary to alleviate homelessness when such family has no feasible alternative housing available, up to the maximum period subject to federal reimbursement
The regulation challenged in this case is found at 106 CMR 309.040 which is entitled “Homelessness due to lack of feasible alternative housing.” Specifically at issue here is 106 CMR 309.040(A)(1)(c) which states:
(1) An EA household shall not be eligible for EA benefits if the EA household has rendered itself homeless: . . .
(c) due to an eviction from public and/or subsidized housing for nonpayment of rent;
Plaintiffs claim that 106 C.M.R. §309.040(A)(1)(c) is in direct conflict with the language and purpose of the EA statute, G.L.c. 18 §2(D). The DTA may not promulgate regulations that are in conflict with the statutes or exceed the authority conferred by the statutes. Bureau of Old Age Assistance v. Commissioner of Public Welfare, 326 Mass. 121 (1950) (regulation that exceeded the DPW’s delegated authority held invalid).
In this case, G.L.c. 18, §2(D) provides that “[t]he department shall promulgate rules and regulations to establish the levels of benefits available under the program . . .” (Emphasis added.) The DTA is therefore authorized only to establish the levels at which benefits are available. Section 309.040(A)(1)(c) denies emergency assistance based on the cause of the homelessness rather than the need for temporary shelter. Therefore, 106 C.M.R. §309.040(A)(1)(c) exceeds the authority granted by and is inconsistent with the language in G.L.c. 18, §2(D). See Bureau of Old Age Assistance, 326 Mass. at 124; Berrios v. Department of Public Welfare, 411 Mass. 587, 596 (1992).
Further, the Legislature directed the DTA to provide shelter to families in need of it in no uncertain terms: EA benefits “ shall include but not be limited to . . . temporary shelter as necessary to alleviate homeless *552 ness when such family has no feasible alternative housing available.” G.L.c. 18, §2(D) (emphasis added). The word “shall” is ordinarily interpreted as having mandatory obligation. Hashimi v. Kalil, 388 Mass. 607 (1983). It is inconsistent with the idea of discretion. Johnson v. District Attorney for the Northern District, 342 Mass. 212 (1961).
Another indication that the Legislature did not intend to vest the DTA with discretion to create exceptions to the statute is the fact that the Legislature has itself created two exceptions in G.L.c. 18, §2(D). First, it provides that EA energy assistance is not available if other federal energy assistance is available within seven days. Second, it provides that no EA is available if a family has transferred property for the purpose of becoming eligible for EA within two years of the application for EA benefits. See District Attorney for the Plymouth District v. Board of Selectmen of Middlehorough, 395 Mass. 629, 633 (1985), quoting 2AC. Sands, Sutherland Statutory Construction §47.11 (4th ed. 1984). (“(E)xceptions are not to be implied. Where there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied.”)
Moreover, the legislative intent of G.L.c. 18, §2(D)(d) is very clear: to “alleviate homelessness” by providing “temporary shelter as necessary.” To deny shelter to families with no other place to go does not fulfill this purpose. It thus conflicts with the purpose of the statute and cannot stand.
In summary, the language and purpose of G.L.c. 18. §2(D), compel the conclusion that the Legislature intended the DTA to provide shelter to families in need without regard to fault or cause of homelessness.
2. G.L.c. 18, §2(B)(d)
Further, the regulation also violates G.L.c. 18, §2(B)(d) because it is not “fair, just and equitable.” In addition to violating the DTA’s specific obligations under G.L.c. 18, §2(D)(d), 106 C.M.R. §309.040(A)(1)(c) also violates the DTA’s more general duties under G.L.c. 18, §2(B)(d) and §2(D). G.L.c. 18, §2(B)(d) requires the DTA to “provide the range of public welfare assistance services on a fair, just and equitable basis to all people in need of such services.” The Supreme Judicial Court has held that the purpose of G.L.c. 18, §2(B)(d) is “to safeguard against arbitrariness.” Opinion of the Justices, 368 Mass. 831 (1975). It is, in substance, the state law counterpart to the federal “equitable treatment” requirement in 45 C.F.R. §233.10(a)(1).
Thus, in Correia v. Department of Public Welfare, 414 Mass. 157 (1993), the Court held that when the DPW implements an assistance program in an unreasonable way, or denies benefits for arbitrary reasons, the DPW violates G.L.c. 18, §2(B)(d). Id. at 164. The defendant argues that it has broad discretion to implement the program as it chooses. In Correia, the Supreme Judicial Court stated that while “(w]e agree with the department that ‘[a] state administrative agency . . . has considerable leeway in interpreting a statute it is charged with enforcing’. .. This deference, however, does not extend to an unreasonable interpretation.” Correia v. Department of Public Welfare, 414 Mass. 157, 165 (1993), quoting Berrios v. Department of Pub. Welfare, 411 Mass. 587, 595 (1992).
The categorical denial of EA shelter to every family who has been evicted from public or subsidized housing for non-payment of rent regardless of need results in a denial of benefits to many families who are not at “fault.” Such arbitrary denials to homeless families who are not at fault necessarily violates G.L.c. 18, §§2(D) and 2(B) (d). Both Dowell and Ratliff show some of the various ways in which evictions for non-payment of rent can occur without the fault of the family.
Dowell was evicted because she could not pay her rent when her AFDC check was reduced to $539.00 but her rent was not reduced to reflect the smaller amount. Ratliff was evicted because she had to take care of her son and could not work as many hours that month.
B. Violates Federal Regulation 42 C.F.R. 233.10(a)(1)
Plaintiffs argue that the DTA’s regulation, 106 C.M.R. §309.040(a)(1)(c) also violates federal regulation 42 C.F.R. 233.10(a)(1) which provides that a state plan must:
Specify the groups of individuals, based on reasonable classifications, that will be included in the program, and all the conditions of eligibility that must be met by (he individuals in the groups. The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act.
The Emergency Assistance program, 42 U.S.C. §606(e) is part of what is called a “scheme of cooperative federalism.” King v. Smith, 392 U.S. 309, 316 (1968). Approximately half of the cost is borne by the federal government and, as the Supreme Court explained describing a similar federal program, “[A]lthough participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services.” Wilder v. Virginia Hosp. Assn., 496 U.S. 498 (1990). The Supreme Court has specifically held that those statutes and regulations, including 45 C.F.R. §233.10 (a)(1), are enforceable by applicants for Emergency Assistance. Blum v. Bacon, 457 U.S. 132 (1982).
The purpose of the EA shelter program is to provide shelter to families who lack feasible alternative housing. However, under §309.040(A)(1)(c), the DTA is *553 denying shelter to the Dowells and Ratliffs based on the notion that these families are at “fault” for their circumstances. Such distinctions between who is sheltered and who is not are arbitrary and unreasonable and therefore violate 45 C.F.R. §233.10(a)(1). See Maticka v. City of Atlantic City, 216 N.J. Super 434, 524 A.2d 416 (A.D. 1987).
In Maticka, just as under 106 C.M.R. §309.040(A)(1)(c), families were denied shelter based on the nature of their evictions. The Maticka Welfare Department denied shelter to families who permitted themselves to become homeless by not making adequate plans to prevent their eviction. The court struck down this requirement as being “inconsistent with . . . the purpose of the federal enabling legislation.” Id. at 452, 524 A.2d at 426. Similarly, 106 C.M.R. §309.040(A)(1)(c) “discriminates against an applicant on the basis of a status that is irrelevant to his need.” Ingerson v. Sharp, 423 F.Supp. 139, 144 (D.Mass. 1976), vacated on other grounds, 582 F.2d 1269 (1st Cir. 1976), further proceedings, Crane v. Commissioner of Public Welfare, 395 Mass. 435 (1986) (distinctions between status and need are “irrelevant to the congressional purpose to protect children from destitution or deprivation of at least minimal living arrangements”) .
In Bacon v.Toia, 437 F.Supp. 1371 (S.D.N.Y. 1976), the court for the Southern District of New York held that:
Although the Social Security Act does leave the states with general discretion as to the form of assistance or payments to be made, 42 U.S.C. §606(e)(l)(A) ... it does not permit them to extend benefits to certain “needy families” while denying “such benefits for some . . . who have the same emergency need.”
Id. at 1385 (citations omitted). In Burton v. New Jersey Dept. of Insts. & Agencies, 370 A.2d 878, 880-81 (1977), citing 42 U.S.C.A. §606(e)(l), the court held that “the scope of emergency assistance available pursuant to state regulation must be at least as broad as the emergency assistance authorized by federal enabling legislation.” See also Civetti v. Commissioner of Public Welfare, 392 Mass. 474 (1984). (“a State receiving Federal financial participation may not adopt a standard of categorical eligibility narrower than the Federal definition”). Id. at 476, n.4, citing Townsend v. Swank, 404 U.S. 282, 286 (1971). Therefore, Massachusetts regulation, 106 C.M.R. §309.040(A)(1)(c) violates 42 U.S.C. 606(e)(1) by narrowing the scope of its provisions that entitle needy families with children to emergency assistance.
III. Class Certification
Under Mass.R.Civ.P. 23(b), a class action may be maintained if the proposed plaintiff class meets four prerequisites:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the representátives of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
MassR.Civ.P. 23(b); Carpenter v. Suffolk Franklin Savings Bank, 370 Mass. 314, 318 (1976). Even if the above requirements are met, the court must find that “the common questions . . . ‘predominate’ over individual questions, and [that] the class action [is] ‘superior’ to other available methods for fair and efficient adjudication.” Carpenter, 370 Mass. at 318; Mass.R.Civ.P. 23(b). Fletcher v. Cape Cod Gas. Co., 394 Mass. 595, 601 (1985). A court must cautiously apply the criteria of Rule 23, because once a Massachusetts class action is certified, it must resolve all issues for all class members. Fletcher, 394 Mass. at 602.
In the present case, the court has been asked to certify a class defined as follows: The class shall consist of all persons eligible for Emergency Assistance who since March 1, 1995: (a) have requested Emergency Assistance emergency shelter benefits; (b) whose applications have been, or will be, denied, because they have been, or will be, evicted from public and/or subsidized housing for non-payment of rent. The plaintiffs are not aware of the exact number of the proposed class; however, they contend that the proposed class is numerous enough to satisfy the impracticable joinder requirement. Specifically, the plaintiffs assert that this action is appropriate for class certification because the possibility of joinder is not only impracticable but virtually impossible.
Defendant objects to class certification claiming that the impracticable joinder requirement is not met. While courts have indicated that “ ‘a bare allegation of numerosity founded upon mere conjecture as to the size of the class does not satisfy the requirements of Rule 23 (a)(1),’ a court may draw reasonable inferences about the size of the class from the facts before it.” Westcott v. Califano, 460 F.Supp. 737, 744 (D.Mass. 1978, affd on other grounds sub. nom. Califano v. Westcott, 443 U.S. 76 (1979). (Citation omitted.) “The fact that the exact number of the class cannot be enumerated does not bar certification . . . [and] it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.” Id. (Citations omitted.) “[W]hether or not the numbers make joinder impracticable ... is the test.” Id. Based upon the foregoing authorities, and the allegations of fact in this case, the court concludes that the plaintiffs have made a showing that their class is so numerous that joinder is impracticable.
First, plaintiffs have submitted data showing that there are approximately 238,000 households that receive some form of rental assistance and 7,487 of these tenants are subsidized under the MRVP program. *554 Many of these people, like Ratliff, are paying between 50-60% of their income on rent and utilities thus they are at risk of eviction for non-payment of rent. This leads to a reasonable inference that the proposed class is growing.
Second, because the plaintiffs are seeking injunc-tive and declaratory relief, the court may relax the requirement that joinder be impracticable. Id. at 745 (where injunctive and declaratory relief are sought, “the requirement that the class is so numerous as to make joinder impracticable has been relaxed”). Finally, the plaintiffs inability to identify class members buttresses their contention that joinder is impracticable. Id. at 745 (“where the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable”). Accordingly, the court finds that the plaintiffs have satisfied the impracticable joinder requirement.
The proposed class also satisfies the second, third, and fourth requirement for class certification under Rule 23. Specifically, the claims of each member of the proposed class will involve questions of law that are common to the class, because each member is an applicant for Emergency Assistance shelter benefits whose claims center on the legality of the Department’s policies and procedures. The commonality requirement is sufficiently satisfied under these circumstances. See Smith and Zobel, Rules Practice, §23.5 (1975) (1995 Pocket Part), at 15 (“trial courts have wide discretion in deciding commonality”); Mass.R.Civ.P. 23(a)(2).
In addition, because no adversity exists between the plaintiffs and the proposed class, and because the claims of the proposed class essentially rest upon the same legad theory (i.e., the illegality of the DTA’s policy and procedures with respect to applicants for EA shelter benefits), the claim of the proposed class likewise satisfies the typicality of claims requirement of Rule 23(a)(3). Smith and Zobel supra, §23.6, at 98-99; Mass.R.Civ.P. 23(a)(3). Further, given that there is no adversity between the interests of the plaintiffs and the proposed class, and having determined the plaintiffs’ counsel to be competent, the court is also satisfied that the plaintiffs will fairly and adequately protect the interests of the class, as required by Rule 23(a)(4). Smith and Zobel supra, §23.7, at 99-100.
The defendant also challenges class certification on (he ground that a class action is not superior to an individual claim for declaratory and injunctive relief. The defendants rely primarily on Doe v. Gaughan, 808 F.2d 871, 872 n.l (1st Cir. 1986), and Dionne v. Bouley, 757 F.2d 1344, 1356 (1st Cir. 1985), contending that a class action is not superior to other methods of adjudication because the plaintiffs seek declaratory and injunctive relief against state officials, and because any benefits granted to the plaintiffs in their individual actions would consequently inure to all others that are similarly situated. The defendant therefore insists that the court can avoid the unnecessary complications of a class action by denying the plaintiffs’ motion for class certification. The defendant further contends that the danger of mootness of an individual claim does not render a class action a superior method of adjudication. The court does not agree.
“(A) judge may be justified in certifying a class despite the mootness of the named representative’s claims” where “a defendant’s voluntary cessation of allegedly wrongful conduct toward the named plaintiff . . . moots [s] his or her claim.” Gonzales v. Commissioner of Correction, 407 Mass. 448, 452 (1990). Under Rule 23, a court retains broad discretion in determining whether litigation may be maintained as a class action. Brophy v. School Comm, of Worcester, 6 Mass.App.Ct. 731, 735 (1978). In particular, the predominance and superiority elements of Rule 23(b) introduce a highly discretionary element. Baldassari v. Public Finance Trust, 369 Mass. 33, 40 (1975).
Without class certification, the defendant can attempt to render any and all individual claims moot simply by providing shelter benefits under the EA program. A denial of class certification under these circumstances would enable the defendants to thwart “the fair and efficient adjudication of the controversy.” Mass.R.Civ.P. 23(b). The court therefore concludes that the plaintiffs have demonstrated a superior method for the fair and efficient adjudication of the legal and factual issues in this case. Accordingly, the plaintiffs motion for class certification shall be allowed.
ORDER
For the foregoing reasons, the plaintiffs’ motions for summary judgment and class certification are hereby ALLOWED. The defendant’s cross-motion for summary judgment is DENIED.
The class to be certified shall consist of all persons eligible for Emergency Assistance who since March 1, 1995: (a) have requested Emergency Assistance emergency shelter benefits; (b) whose applications have been, or will be, denied, because they have been, or will be, evicted from public and/or subsidized housing for non-payment of rent.

Aid to Families With Dependent Children.