## Muqeedah Salaam *vs.* Commissioner of Transitional Assistance.

No. 95-P-1585.

Worcester. March 19, 1997. - June 24, 1997.

Present: Kass, Greenberg, & Flannery, JJ.

*Aid to Families with Dependent Children. Identification. Administrative Law,* Substantial evidence, Regulations. *Regulation.*

No substantial evidence supported the decision of a hearing officer of the Department of Transitional Assistance denying an application for Aid to Families with Dependent Children benefits on the ground that the applicant had not provided adequate identification. [41-44]

Civil action commenced in the Superior Court Department on February 10, 1994.

The case was heard by *Martha B. Sosman,* J., on a motion for summary judgment.

*Francisca D. Fajana* for the plaintiff.

*Salvatore M. Giorlandino,* Assistant Attorney General, for the defendant.

Greenberg, J. Under 42 U.S.C. §§ 601-615 (1988), and chapter 118 of the General Laws, the Department of Transitional Assistance (department), formerly known as the Department of Public Welfare, has authority to provide financial assistance to needy, dependent children and relatives living with them. Such benefits are known as Aid to Families with Dependent Children, or AFDC.[1] On October 13, 1993, Salaam applied for AFDC benefits for herself and her dependent niece. Her application for benefits was denied on the ground that she had not provided adequate identification. Following an administrative appeal, the hearing officer was unmoved and upheld the denial of benefits. As was her right under G. L. c. 30A, § 14, Salaam sought judicial review in

[1]AFDC is a joint Federal-State program.

the Superior Court. In that forum, the department prevailed on a motion for summary judgment. We vacate the judgment.

It is well settled that the "purpose of the AFDC program is to enable children, one or both of whose parents are absent or unable to provide support, to continue living at home through the provision of funds for their shelter, food, and other necessary items." *Civetti* v. *Commissioner of Pub. Welfare*, 392 Mass. 474, 477 (1984). To qualify for benefits, an applicant must, among other things, establish his or her identity. 106 Code Mass. Regs. § 302.130(B) (1982), § 302.300 (1993), § 303.120 (1984). Acceptable sources of verification include the applicant's "Social Security card, driver's license, voter registration card, military service papers, marriage license, employment papers . . . ." 106 Code Mass. Regs. § 302.130(B).

The question here is whether Salaam presented documentation sufficient to establish her identity. The hearing officer decided that she did not, and concluded that there had been no error in the department's initial determination that the information Salaam provided was "questionable" regarding her identity. The hearing officer concluded by stating, "[t]he issuance of two social security numbers after the name change, without a real explanation other than for 'privacy' reasons is not sufficient to outweigh the department's responsibility to assure that information is consistent and accurate." In allowing the defendant's motion for summary judgment, the Superior Court judge affirmed the department's decision on the ground that sufficient evidence supported its decision that Salaam had failed to verify her identity.

An administrative agency's decision must be supported by substantial evidence. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1, inserted by St. 1954, c. 681, § 1. When determining if an agency's decision is supported by substantial evidence, courts must examine the entire record, and consider whatever detracts from its weight. *Pyfrom* v. *Commissioner of Pub. Welfare*, 39 Mass. App. Ct. 621, 624-625 (1996).

We summarize the evidence in the present case. Salaam claims that she was born Bertha Gayle Stovall, daughter of Gabriel Stovall and Emma Chavis Stovall. When she converted to the Islamic faith in 1980, she changed her name

to Muqeedah Zenobia Salaam. Salaam applied for AFDC benefits on October 13, 1993, after being named legal guardian of her niece, Dominique Stovall. As required by AFDC regulations, Salaam supported her application with documentation to establish both her own identity and kinship to the child. 106 Code Mass. Regs. §§ 302.130(B), 303.210(A) (1992). These documents included: a social security card; a 1990 Department of Welfare identification card; the guardianship decree; the birth certificate of her brother, Gabriel L. Stovall (Dominique's father); a birth certificate under her original name[2]; high school records of Bertha Stovall[3]; a driver's license under her new name, Salaam, containing the November 8, 1955, date of birth[4]; her marriage license, listing the names of both of her parents[5]; and an affidavit from her father.[6]

While processing her application, the department learned that the social security number presented by Salaam was the second number she had been issued.[7] In response to department inquiries about the two numbers, Salaam responded that her number was changed for "privacy" reasons, and that she uses only the second number. As support, Salaam pre-

---

[2]Salaam presented a birth certificate from the State of North Carolina for "Bertha Gayle Stovall." The document contained handwritten changes, lacked an official seal, and contained a date of signing (November 3, 1955) predating the date of birth (November 8, 1955). The department subsequently obtained an abstract of the official record indicating the birth of Bertha Gayle Stovall as November 8, 1955.

[3]Salaam presented a high school transcript of Bertha Gayle Stovall. Aside from confirming her attendance, the document indicated a birth date of November 8, 1955, and identified her father as Gabriel Lee Stovall.

[4]By election of the applicant, the license contained no social security number.

[5]The marriage certificate reflected that "Muqeedah Z. (Stovall) Salaam" married Sulyamuun Shabbazz on August 7, 1981. The certificate listed Salaam's parents as Gabriel L. Stovall and Emma Chavis. While the document indicated no birth date, it noted the bride's age as 25; this age would be consistent with a November 8, 1955, date of birth. The record indicated that Salaam would use the surname Shabbazz following the marriage.

[6]The affidavit identified the affiant as the father of "Bertha-Gayle Stovall AKA Muqeedah Zenobia Salaam," born November 8, 1955, in Henderson, North Carolina. Mary G. Babbidge, Justice of the Peace, notarized the affidavit in Worcester, Massachusetts on November 18, 1993.

[7]Salaam presented a card to the department containing one number; the department discovered that Salaam had previously been issued a different number.

sented a social security form verifying that she had been issued a second number, and that she is authorized to use that number only.

On these facts, the hearing officer cited two reasons for her unfavorable decision. First, the hearing officer noted that the affidavit was the sole document equating Bertha Stovall and Muqeedah Salaam. As the affiant was someone "who was not present at the hearing . . . and who would be biased since he is her father," the hearing officer refused to accept the document to verify identity. Second, she concluded that Salaam's explanation that she requested a second social security number for "privacy" reasons was "not sufficient to outweigh the department's responsibility to assure that information is consistent and accurate."

Recognizing that the documents support, at least in part, Salaam's assertion that she is the former Bertha Gayle Stovall, the judge characterized the department's reasoning as "at times puzzling." In particular, she found "perplexing" the department's rejection of the affidavit.[8] Constrained by the substantial evidence standard, however, the judge thought that the record warranted the department's conclusion.[9]

While the judge appropriately observed the narrow scope

[8] In a footnote, the trial judge pointedly observed why the department's rejection of the affidavit was perplexing:

> "The affidavit was signed by one claiming to be Gabriel Stovall. The affidavit was notarized by a Worcester Justice of the Peace. The affidavit was not rejected on any suspicion that the document was falsified, but was discounted due to bias because he is her father. If the hearing[] officer accepted that Gabriel Stovall *was* plaintiff's father, then the hearing[] officer was convinced of the very thing that plaintiff was trying to prove by way of the affidavit — i.e., that she was Gabriel Stovall's daughter. It is the utmost in circuitous reasoning to reject an affidavit in which the affiant claims to be someone's father on the very ground that being someone's father makes the affiant biased."

[9] The judge also recognized that the department refused to accept the marriage certificate as evidence linking Muqeedah Salaam to Bertha Stovall because the certificate did not contain the bride's original first name, though it did include her original last name. The certificate lists the names of both of the bride's parents, and the bride's age, which corresponds to that of Bertha Gayle Stovall. As the judge stated, "it seems unlikely in the extreme that the marriage certificate is referring to some other child of Gabriel and Emma Stovall of the same age who made the exact same name change."

of judicial review under G. L. c. 30A, § 14, the department's stated reasons for denying benefits place an unreasonable burden of proof on the applicant in a setting where the department is supposed to be helpful, albeit with watchful eye for overreaching or fraud to its constituents. As the court observed in *Correia* v. *Department of Pub. Welfare*, 414 Mass. 157, 164 (1993), "[a]lthough the department has broad discretion to implement the program as it chooses, . . . denials for arbitrary and technical reasons rise to the level of unreasonableness." According to G. L. c. 18, § 2(B)(*d*), which describes the department's obligations in the implementation of its programs, the department has an obligation to provide assistance "on a fair, just and equitable basis."

The department argues, correctly, that the applicant must provide objective verification of her identity. The department may not, however, erect more of an obstacle course than is necessary to ensure the avoidance of fraud. In the present case, Salaam presented a document from the Social Security Administration (SSA), verifying that she was, in fact, issued two social security numbers. The document stated, "Please be advised that Muqeedah Z. Salaam has been issued SSN [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] and SSN [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]. She has been using and will continue to use SSN [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]." Without articulating why it was dissatisfied with the document from SSA or what additional facts it wanted, the department refused to credit the SSA document. The SSA, pursuant to its own written policies, may issue a second social security number only in particular circumstances and according to detailed procedures. See Social Security Program Operations Manual System RM 00205.001 (1997). The "fair, just and equitable" course would have been for the department to accept the SSA's statement that it issued Salaam two numbers as prima facie evidence that the second number was properly issued. Instead, as the department indicates in its brief, it refused to credit the SSA document because it "does not state that the second social security number was issued for any of the reasons permitted by social security . . . ." By not accepting that the SSA would only issue a second number for a permissible reason, the department was, in effect, second-guessing another agency. The current regulations do not provide for such a practice.

Additionally, a government agency is bound to respect its own regulations, as long as they exist on the books. *Amherst*

*Nursing Home, Inc.* v. *Commonwealth,* 16 Mass. App. Ct. 638, 642 (1983). Cella, Administrative Law and Practice § 725 (1986). The department's regulations impose affirmative responsibilities on both the AFDC applicant and the department. Conspicuously absent from the hearing officer's decision is a recognition of the department's responsibilities in the eligibility verification process. 106 Code Mass. Regs. § 302.310 (1985).[10] The department worker is charged with, among other things, "identifying and providing written notice of the specific documents and the .alternative documents, if applicable, that must be submitted to verify the eligibility factors; . . . offering suggestions of where and how to obtain the verification(s); and assisting in obtaining required verification(s) when the worker is aware that the applicant/recipient is unable to obtain the verification(s) for reasons beyond his or her control." 106 Code Mass. Regs. § 302.310(B) (1985). The department counters Salaam's argument that it failed to assist her by pleading ignorance of any difficulties she may have encountered.

It may be true, as the department contends, that the regulations place a burden on the applicant to notify it of difficulties. The applicant is responsible for "obtaining the required verification(s); contacting the worker if there is a delay or difficulty in obtaining the verification(s); cooperating with the worker to obtain the verification(s) when worker assistance is requested . . . ." 106 Code Mass. Regs. § 302.310(A) (1985). "A court may conclude that an agency regulation which, as written, may not be arbitrary or irrational has been applied in a manner that produces a result antithetical to purposes of the enabling statute." *Massachusetts Coalition for the Homeless* v. *Secretary of Health & Human Servs.,* 422 Mass. 214, 227 (1996). The department makes no contention that Salaam attempted, in any way, to conceal the fact that she had been issued two social security numbers. To the contrary, Salaam used reasonable efforts to verify the authenticity of the second number, and believed she had succeeded in so doing. It is apparent from the record that Salaam did not request assistance from the department because she did not consider it neces-

---

[10]The department asserts that Salaam failed to raise expressly below this issue of the department's responsibilities, but that question is inherent in whether, on the administrative record, the department acted in accordance with the law.

sary to do so. For its part, however, the record reveals that the department, having become cognizant of the two numbers, could have allayed its concerns by simply placing a telephone call to· the SSA, or by asking Salaam for further explanation.[11]

The deference which an agency decision is due does not extend to an unreasonable interpretation of its regulations. *Correia* v. *Department of Pub. Welfare*, 414 Mass. at 165. We are unable to find substantial evidence to support the department's decision. The array of documents presented, including the affidavit and social security verification form, detract significantly from the weight of the hearing officer's decision. We conclude that the department's concerns about the affidavit and the social security numbers are not adequate to support its decision to deny Salaam AFDC benefits. G. L. c. 30A, § 1(6).

The judgment of the Superior Court affirming the decision of the department is vacated. The case is to be remanded to the department to determine the amount of retroactive benefits due Salaam.

*So ordered.*

---

[11]A department representative recognized this possibility when, testifying as to the department's confusion over the two numbers, she stated, without having been asked, "I never called them . . . ."