## Elizabeth Smith & another[1] *vs.* Commissioner of Transitional Assistance.

Suffolk. March 7, 2000. - May 26, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, Spina, & Cowin, JJ.

*Transitional Aid for Families with Dependent Children. Welfare Reform Act. Moot Question. Practice, Civil,* Moot case. *Administrative Law,* Regulations. *Regulation. Statute,* Construction. *Constitutional Law,* Separation of powers. *Injunction.*

Discussion of the Transitional Aid for Families with Dependent Children program, administered by the Department of Transitional Assistance. [640-641]

This court declined to dismiss as moot appeals concerning certain orders of a Superior Court judge, where the issues raised were of public importance, were fully briefed, and were capable of repetition. [644-645]

A Superior Court judge correctly concluded that 106 Code Mass. Regs. § 203.210(A), promulgated by the Department of Transitional Assistance, was void as contrary to the plain language and purposes of the Welfare Reform Act, St. 1995, c. 5, § 110, where application of the financial eligibility criterion set forth in the regulation effectively preempted the consideration of other eligibility factors mandated by the act to be considered when determining whether the benefits of a recipient of assistance should be extended. [645-651]

A Superior Court judge did not abuse her discretion, or violate the separation of powers, by entering two orders requiring the Department of Transitional Assistance to take certain steps toward reinstatement of benefits to recipients affected by the department's prior application of a regulation the judge had ruled void, in circumstances in which the needs of recipients were urgent and the department had had sufficient opportunity to exercise its own discretion to undertake corrective measures but had not acted expeditiously. [651-653]

Civil action commenced in the Superior Court Department on March 5, 1999.

A motion for partial summary judgment was heard by *Regina L. Quinlan,* J., and entry of separate and final judgment was ordered by her.

[1]Michelle Muise. Elizabeth Smith is a pseudonym. They sue on behalf of themselves and others similarly situated. See note 6, *infra.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John R. Hitt*, Assistant Attorney General (*Judith S. Yogman*, Assistant Attorney General, with him) for the defendant.

*Ruth A. Bourquin* for the plaintiffs.

MARSHALL, C.J. The plaintiffs, Elizabeth Smith and Michelle Muise, challenge a Department of Transitional Assistance (department) regulation, 106 Code Mass. Regs. § 203.210(A) (1999), governing recipients' eligibility for extensions of benefits under the Transitional Aid for Families with Dependent Children program (TAFDC), and sought declaratory and injunctive relief.[2] A central question raised by the complaint is whether the financial eligibility test of the challenged regulation is consistent with relevant provisions of St. 1995, c. 5, § 110, also known as the Welfare Reform Act or Chapter 5 (Act). A judge in the Superior Court agreed that in establishing the financial eligibility test as it did in 106 Code Mass. Regs. § 203.210(A), the department exceeded the statutory authority conferred by the Act, and she granted summary judgment to the plaintiffs on this point. The department appealed that ruling and the judge's May 13, 1999, and May 20, 1999, orders granting injunctive relief to implement the earlier decision. We transferred this case from the Appeals Court on our own motion.

The plaintiffs have filed a motion to dismiss portions of the

---

[2] In their complaint, the plaintiffs challenged both subsections (A) *and* (C) of 106 Code Mass. Regs. § 203.210 (1999). The Superior Court judgment held subsection (C) and the financial eligibility test of subsection (A) void and the department appealed from that judgment. However, on appeal, the commissioner is no longer contesting the Superior Court's declaration that § 203.210(C) is invalid and, accordingly, we need not address the validity of that subsection.

The financial eligibility test of § 203.210(A) provided that an "earnings disregard" was not to be used in determining whether a working TAFDC benefits recipient was entitled to an extension of benefits. In contrast, § 203.210(C) regulated the calculation of the grant amount for those awarded an extension of benefits. It provided that for those employed TAFDC recipients receiving benefits during an extension, total countable earned income was to be deducted from TAFDC benefits *without* applying the earnings disregard used to calculate benefits for employed recipients during the initial twenty-four months benefits period. See 106 Code Mass. Regs. § 203.210(C). Compare *id.* with 106 Code Mass. Regs. § 204.285. The department reports that even though § 203.210(C) has not been formally repealed, the department "no longer applies it in calculating the amount of benefits paid to recipients during extension periods."

appeal as moot. For the reasons discussed below, we deny that motion (see Part 2). We affirm the entry of partial summary judgment in the plaintiffs' favor, invalidating the financial eligibility criteria in 106 Code Mass. Regs. § 203.210(A) (see Part 3), and affirm the injunctive orders granted by the court (see Part 4).

1. *Background.* Transitional Aid for Families with Dependent Children, administered by the department,[3] is the successor program to Aid to Families with Dependent Children (AFDC). See generally St. 1995, c. 5, § 110 (*a*); G. L. c. 118, §§ 1, 2; *Massachusetts Coalition for the Homeless* v. *Secretary of the Executive Office of Health & Human Servs.*, 422 Mass. 214, 217 (1996); *Salaam* v. *Commissioner of Transitional Assistance*, 43 Mass. App. Ct. 38, 38 (1997). The purpose of the program, generally, is to enable children to continue living at home through the provision of funds for their shelter, food, and other necessities, where one or both parents is unable fully to provide support or is absent. *Salaam* v. *Commissioner of Transitional Assistance, supra* at 39. See *Massachusetts Coalition for the Homeless* v. *Secretary of the Executive Office of Health & Human Servs., supra* at 221 (discussing department's duty under G. L. c. 118, § 2). The program was amended by the Welfare Reform Act in 1995, an act whose stated purposes were to "promot[e] the principles of family unity, individual responsibility and self-reliance and to structure financial and economic incentives and disincentives that promote such principles in the administration of [TAFDC]." St. 1995, c. 5, § 110.

The Welfare Reform Act established a twenty-four month cumulative limit on a nonexempt[4] recipient's receipt of TAFDC benefits in a sixty-month period, unless an extension is granted.[5] St. 1995, c. 5, § 110 (*f*). If a nonexempt recipient is employed during the twenty-four month period, her benefits are reduced by the amount of her earned income minus an "earnings

---

[3]Formerly the Department of Public Welfare. See St. 1995, c. 5, § 110 (*a*).

[4]The disabled, recipients who must care for a disabled child or spouse, and certain other categories of recipients are exempt from the twenty-four month benefit limit and certain other provisions of the Act. St. 1995, c. 5, § 110 (*e*). Other recipients are "nonexempt," and thus generally limited to twenty-four months of benefits in a five-year period. See § 110 (*e*), (*f*).

[5]Under departmental regulations each extension is limited to a period of up to six months, but there is no limit to the number of extensions that may be given particular recipients who qualify. See 106 Code Mass. Regs. § 203.210(D).

disregard" of thirty dollars and one-half of the recipient's earned income. St. 1995, c. 5, § 110 (*d*), (*g*). This "earnings disregard" effectively increases an employed recipient's benefits by the disregarded amount, i.e., by thirty dollars plus one-half of the income earned. The department also applies the earnings disregard to determine whether a recipient family makes too much earned income to be initially eligible for TAFDC benefits. 106 Code Mass. Regs. § 204.260. Under the financial eligibility test of the challenged regulatory provision, however, the earnings disregard is *not* applied in determining eligibility for an extension, 106 Code Mass. Regs. § 203.210(A), making it more difficult for the working poor to obtain an extension of benefits than if the disregard was applied. The plaintiffs assert that this regulation is not consistent with the letter, or the legislative intent, of the Act.

Smith and Muise are two working mothers paid less than $680 per month in take home pay and consequently eligible for transitional assistance.[6] The plaintiffs were nonexempt recipients of TAFDC, and were thus subject to the twenty-four month assistance limit. Both would be eligible for TAFDC benefits but for the fact they have exhausted that twenty-four month limit. The plaintiffs claimed that the challenged regulation's financial eligibility requirements for the extension of benefits prevented them or would have prevented them from obtaining an extension of transitional assistance.

We recount the procedural history of this case in some detail as it has a bearing on the subsidiary issue raised by the plaintiffs of the asserted mootness of portions of the DTA's appeal and on the appeal of injunctive relief. The action was filed on March 5, 1999. On April 20, 1999, the judge allowed the plaintiffs' partial summary judgment motion as to Count I of their complaint that asserted that 106 Code Mass. Regs. § 203. 210(A), concerning the test of financial eligibility for extensions, and § 203.210(C), concerning the calculation of the amount of extension benefits, violated St. 1995, c. 5, § 110 (*d*),

---

[6]The plaintiffs filed their complaint on behalf of themselves and the class of all others similarly situated. On June 28, 1999, a judge in the Superior Court allowed the plaintiffs' unopposed motion for class certification. The certified class is comprised of all "current, former and future recipients of or applicants for [TAFDC] benefits who have been, are being or will be denied the benefit of the earnings disregards, as provided for by St. 1995, c. 5, § 110(d) and (g), because of operation of . . . 106 [Code Mass. Regs. §] 203.210(A) or 106 [Code Mass. Regs. § ] 203.210(C)."

(*g*), and (*j*). The judge also granted partial summary judgment for the plaintiffs as to Count II of their complaint that asserted that 106 Code Mass. Regs. § 203.210(A) violated St: 1995, c. 5, § 110 (*f*).[7] At that time the judge denied the plaintiffs' motion for a preliminary injunction, but stated that "[t]he denial of plaintiffs' motion for preliminary injunction is subject to reconsideration if the court's order is not implemented."[8] On April 27, 1999, the plaintiffs filed a renewed motion for a preliminary injunction or prompt enforcement of the judgment, asserting that the plaintiffs were struggling to survive in the throes of poverty, with very limited earnings and no TAFDC benefits; that the department had communicated that it was likely to appeal and to seek a stay of the judgment pending appeal; and that it gave no assurances that the department would take steps to implement the April 20 judgment prior to a decision on any appeal.

According to a May 6, 1999, affidavit of the deputy commissioner of the department, the department had by May 6 begun to take steps to comply with the judge's order.[9] On May 7, 1999, on the parties' joint motion, having determined that there

[7]The subsections provide, inter alia, as follows. Subsection (*f*) establishes a twenty-four month cumulative limit for initial TAFDC benefits, but provides for extensions and mandates certain extension eligibility criteria. Subsection (*d*) provides that exempt recipients shall receive a higher benefits payment than nonexempt, but sets an earnings disregard of thirty dollars and one-half of earned income for nonexempt recipients. Subsection (*g*) provides that exempt recipients and certain applicants shall be eligible for an earnings disregard of thirty dollars and one-third of earned income, and that nonexempt recipients and certain applicants shall be eligible for an earnings disregard of thirty dollars and one-half of earned income, for the entire period that the recipient is eligible for assistance. Subsection (*j*) provides for a work program for nonexempt recipients, requiring the head of household in each recipient family to work twenty hours each week and provides for the application of the earnings disregard for earned income for those who work twenty hours each week. St. 1995, c. 5, § 110.

[8]Action was deferred on Counts III, IV, and V that asserted, respectively, that the two department regulations violated G. L. c. 18, § 2 (B)(*d*), arts. 1 and 10 of the Declaration of Rights of the Massachusetts Constitution, and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. The department states that its motion to dismiss Counts III, IV, and V is still pending in the trial court.

[9]According to the affidavit, the department issued a field operations memorandum, dated May 5, 1999, instructing staff to "stop taking actions on pending extension requests on cases with earnings"; was working with its management information systems department "to determine how to prospectively adjust the benefit level of recipients currently receiving exten-

was no just reason for delay, the judge entered a judgment, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), that 106 Code Mass. Regs. § 203.210(C) and the financial eligibility criteria in § 203.210(A) are void because they are "contrary to the plain language of the statute and its underlying purpose." According to a May 11, 1999, affidavit of the deputy commissioner, the department began taking additional steps to comply with the judge's decision, beyond those listed in the May 6, affidavit.[10] The department had also reportedly ceased to apply 106 Code Mass. Regs. § 203.210(A) and (C).

On May 13, 1999, the judge allowed the plaintiffs' motion for preliminary injunction and issued an order directing the department to take certain steps toward the reinstatement of benefits to individuals affected by the regulation.[11] On May 20, 1999, the judge issued a revised order that reiterated the substance of the earlier order and corrected erroneous citations. The department filed a notice of appeal, on May 27, 1999, from the May 7 judgment, the May 13 order, and the May 20 revised order.

On July 14, 1999, the judge issued a memorandum of decision and order on the plaintiffs' emergency motion for further order. In this order, the judge stated that she had "determined that the multi-page Notice sent to former TAFDC recipients by the [department] is unnecessarily complex, and is insufficient to advise recipients of their right to have their TAFDC benefits reinstated pending review of an application for extension. The Department's requirement that families complete the application for an extension of benefits as a condition precedent to having benefits reinstated is inconsistent with the [April 20 order]." This order stated that "the court further modifies its April 20 order to ensure that the intent of the court, as expressed in that

sion benefits to reflect the earnings disregard"; was "in the process of identifying those former recipients whose extension requests were denied on or after April 20, 1999 (the date of the Court's decision), because of application of 106 [Code Mass. Regs.] § 203.210(A), in order to promptly restore their benefits pending further consideration of their extension requests"; and was "in the process of drafting more detailed instructions concerning implementation of the Court's decision, which will be sent to field staff in the near future."

[10]Details of the department's planned steps to implement the May 7 judgment, as recounted in the May 11 affidavit, are discussed in Part 4.

[11]Essential aspects of the judge's May 13 order, as revised on May 20, are described in Part 4.

Order and in the May 13 and May 20 clarifications of that Order, is carried out." The order required the department to mail a copy of an attached one-page notice to each member of the class of former TAFDC recipients whose benefits had been terminated after twenty-four months or after denial of an extension. A simple application for reinstatement of benefits was also attached.

Pursuant to a motion by the defendant, granted in part, the judge made several minor revisions to the July 14 order in a July 15, 1999, order.[12] The department appealed from the July 15, 1999, order. On October 1, 1999, however, the department moved to dismiss voluntarily its appeal of the July 15 order and the Appeals Court dismissed this appeal with prejudice.

2. *Mootness.* After transfer of the case to this court, Smith and Muise moved for the dismissal of the department's appeal concerning the May 13 and May 20 orders on grounds of the mootness of those claims. They argue that those orders have been superseded by subsequent implementation orders entered July 14 and 15 by the Superior Court judge and no longer under appeal by the department. They claim the July orders cover "all of the same subjects as were covered by the May 13 and May 20 orders."

The plaintiffs assert that the department has been using the procedures required by the July 14 and 15 orders to implement the judge's April 20 and May 7 decisions, rather than the procedures used pursuant to the May 13 and May 20 orders, and that the July orders render the department's appeal of the May 13 and 20 orders moot. The plaintiffs do not suggest, however, that the department's appeal from the judge's May 7 declaratory judgment is moot. The practical effect of allowing the plaintiffs' motion would be to eliminate the basis for the department's appeal concerning the judge's injunctive orders, discussed in Part 4, because that appeal is levied at the specific measures ordered by the judge in her May 13 and 20 orders.

The department opposes the motion, arguing that the July orders did not supersede, but only clarified, the May 13 and

---

[12]In the July 15, 1999, order, the judge allowed the motion with respect to the effective date of the restoration of benefits for certain former recipients and amended the notice to be distributed to former recipients. The July 15 order also provided that the review of eligibility of these former recipients shall be accomplished within ten days of the receipt of the request for reinstatement. In all other respects the motion was denied by the judge.

May 20 orders. Second, the department argues that the issue of the Superior Court judge's alleged abuse of discretion and violation of the separation of powers, challenged by the appeal of the May 13 and 20 orders, is of public importance, has been fully briefed, and is capable of repetition. See *Matter of Sturtz,* 410 Mass. 58, 60 (1991). See also *Attorney Gen.* v. *Commissioner of Ins.*, 403 Mass 370, 380 (1988). The department points to the fact, for example, that the judge issued further "detailed injunctive orders" on November 29 during the pendency of this appeal.

The arguments of the department are convincing. Instead of simply replacing the May orders, the July 14 order by its terms is a "further modifi[cation]" of the April 20 order "to ensure that the intent of the court, as expressed in that order *and in the May 13 and May 20 clarifications of that Order*, is carried out" (emphasis added). The May 13 and May 20 orders established the over-all framework of remedial steps the department was to take to remedy the impact of the regulations the court concluded were erroneous. In contrast, the July orders were narrowly focused on the nature of the notice to be mailed to each member of the class, even if that notice touched on many of the remedial steps addressed by the two May orders. We cannot, therefore, conclude that the appeal of these May orders is moot.

Moreover, even if the voluntary dismissal of the appeal of the July orders had technically rendered the appeal of the two May orders moot, the issue of the extent to which the judge can order the department to undertake specific remedial steps in this case remains a live one capable of repetition, as witnessed by the judge's November 29 order. See *Matter of Sturtz, supra* at 60. Furthermore, the issue of the separation of powers presented by that appeal has been fully briefed by both sides. See *Ott* v. *Boston Edison Co.*, 413 Mass. 680, 683 (1992). Any modest gain in judicial economy achieved by forgoing decision on the issue now could be lost in later challenges to the scope of the judge's authority to order subsequent remedial steps. For these reasons we deny the plaintiffs' motion to dismiss as moot the department's appeal of the May 13 and May 20 orders.

3. *Consistency of the challenged regulation with the Welfare Reform Act.* On appeal, the department argues that the judge erred in declaring the challenged regulation void because the department was acting within its authority under the Act when it promulgated 106 Code Mass. Regs. § 203.210(A), establish-

ing a financial eligibility criterion for extension of benefits. Further, the department argues that the challenged regulation is consistent with the underlying purpose of the Act.

Our review of the validity of a regulation promulgated by a State agency is guided by the established principle that "[r]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Dowell* v. *Commissioner of Transitional Assistance*, 424 Mass. 610, 613 (1997), quoting *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 598 (1992). "These principles of deference, however, are not principles of abdication." *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995), citing *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. 548, 550 (1991). See *BayBank* v. *Bornhofft*, 427 Mass. 571, 577 (1998); *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997). An agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts. See *Massachusetts Hosp. Ass'n* v. *Department of Medical Sec.*, 412 Mass. 340, 346 (1992).

Under the Welfare Reform Act, the commissioner was to establish a procedure by which a recipient could request an extension of benefits beyond the twenty-four month cumulative limit. St. 1995, c. 5, § 110 (*f*). See 106 Code Mass. Regs. § 203.210. The Act required the commissioner to:

> "establish criteria to be considered in making a determination that a recipient['s] benefits should be extended. Such criteria shall include, but not be limited to: (*i*) whether the recipient has received and or rejected offers of employment, has quit a job without good cause or has been fired for cause; (*ii*) the degree to which the recipient has cooperated, and is cooperating, with the agency in work-related activities. In making said determination, the commissioner shall, further, consider whether appropriate job opportunities actually exist locally at a given point in time for recipients." § 110 (*f*).

The statutory language is thus unequivocal that in "making a determination [whether] a recipient['s] benefits should be extended" at least three things must be considered — the two factors (i) and (ii) just noted and whether appropriate job op-

portunities exist locally. *Id.* The commissioner is empowered by the statute to add additional criteria to be considered when determining whether a recipient's benefits should be extended, but not to bypass these three factors.[13] See *id.* Thus, this is not a case where judicial intervention is inappropriate because "the Legislature has not imposed specific restrictions on the reasonable methods by which an agency may carry out its mandate." *Massachusetts Coalition for the Homeless* v. *Secretary of the Executive Office of Health & Human Servs.*, 422 Mass. 214, 222-223 (1996). Cf. *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, 426 Mass. 458, 460-461 (1998) (upholding commissioner's interpretation of statutory term where term's meaning was "fairly debatable").

Under the challenged provisions of 106 Code Mass. Regs. § 203.210(A), "*before* a determination of eligibility is made, a financial test of eligibility is required" (emphasis added). Under the financial eligibility test of the challenged regulatory provision, however, a nonexempt recipient is ineligible for an extension of benefits if the earned and unearned income, minus certain deductions, exceeds the TAFDC benefits the recipient would normally receive. 106 Code Mass. Regs. § 203.210(A). While we agree with the department that the statute does not specify the weight that must be given to various criteria, or the order in which they are considered, the challenged regulatory provision creates a financial eligibility criterion that, if not just weighted heavily or examined first, may become the sole factor weighed or examined, a result inconsistent with the statutory scheme.[14] The use of this financial eligibility test as a preliminary screen for extension eligibility effectively and inap-

---

[13]The department argues that the judge's conclusion that the statute requires the application of all these criteria in every case is unreasonable, for example, where, as here, the recipients have already succeeded in finding and retaining paid employment. The department argues that in such cases these criteria "are likely to be patently inapplicable." We disagree. Even with recipients who are employed part time, like these plaintiffs, the department might want to know if they have rejected the opportunity to have additional work or have been fired from or quit other employment. Any inquiry into unemployment or underemployment is reasonably linked to whether appropriate job opportunities exist locally. Although a recipient with a job is less likely to be barred from an extension on such criteria, that does not render the criteria inapplicable to employed recipients such as the plaintiffs.

[14]The department argues that the commissioner submitted her regulations concerning extensions to the Legislature as required by St. 1998, c. 194, § 2, line item 4400-1000, and that if the Legislature had found the regulations

propriately preempts the commissioner's consideration of the factors the statute mandated the commissioner to consider when determining whether a recipient's benefits should be extended. As the Superior Court judge correctly concluded, "[t]here is no language in the statute to suggest that the Legislature intended that the [department] could 'predetermine' a request for an extension . . . and assume the power to deny a recipient an extension without the need to consider those criteria mandated by the statute in § 110 (*f*)."[15]

In addition, although it is not stated directly in the extension provision of the Act, see St. 1995, c. 5, § 110 (*f*), in closely related provisions the Act specifies that the earnings disregard shall apply "for the entire period that any such recipient is eligible for assistance." § 110 (*g*). *Id.* at § 110 (*d*). The fact that § 110 (*g*) by its terms applies the earnings disregard not only to recipients but also to certain *applicants* for assistance demonstrates that the earnings disregard is not simply to be used in determining the benefits level of those who are found eligible to receive benefits, as the department apparently contends. See *id.* See also 106 Code Mass. Regs.

contrary to legislative intent, it could have amended the statute to clarify its intent, which it has not done. That statutory provision required the submission of the specified regulatory criteria by August 15, 1998, or else certain departmental expenditures would be limited. This provision appears on its face to be a spur for the submission of the criteria for determining whether a recipient's benefits should be extended, three years after the passage of the Welfare Reform Act required creation of those criteria, rather than a guarantee of legislative review of the criteria submitted. See St. 1998, c. 194, § 2, line item 4400-1000. See also St. 1995, c. 5, § 110 (*f*). Moreover, the plaintiffs assert that the Legislature was in session only two months between the department's adoption of the criteria and the filing of this lawsuit. On that basis, we agree with the plaintiff that little can be read into the Legislature's failure to amend the statute. In any event, "the views of a subsequent [Legislature] form a hazardous basis for inferring the intent of an earlier one." *United States* v. *Price*, 361 U.S. 304, 313 (1960).

[15]The judge also noted that the department appears to treat an extension "not [as] a continuation of the [twenty-four]-month period of benefits, but rather [as] a separate, short-term benefit that begins only after the expiration of the [twenty-four]-month period," 106 Code Mass. Regs. § 203.210(D). The judge concluded, and we agree, that this approach misconstrues the plain meaning of the term "extension" used by the statute, St. 1995, c. 5, § 110 (*f*). See G. L. c. 4, § 6 (in construing statutes words shall generally be construed according to common usage). The fact that the extension is simply an extension of existing benefits, and not "a separate, short-term benefit," is further grounds for not adding impermissible barriers to the continuation of benefits to those already properly qualified to receive them.

§ 204.260(B)(6)(c), (8)(c) (applying earnings disregard to "second test of eligibility" for TAFDC benefits). It seems clear from these provisions that the statutory scheme envisions the use of the earnings disregard to determine financial eligibility for benefits, as well as the level of benefits, throughout the period during which a recipient is eligible for assistance, and this would include the period in which a recipient is eligible for assistance by way of an extension.

Moreover, in assessing whether a regulation runs counter to the language of a statute, "[w]e interpret the words used in a statute with regard to both their literal meaning and the purpose and history of the statute within which they appear." *Massachusetts Hosp. Ass'n* v. *Department of Medical Sec.*, 412 Mass. 340, 346 (1992). We may reject a regulation that "is contrary to the plain language of the statute and its underlying purpose." *Id.* Here, the purposes of the Welfare Reform Act included the promotion of the principles of individual responsibility and self-reliance and the structuring of economic incentives and disincentives to promote such principles. St. 1995, c. 5, § 110. Through the earnings disregard, the statute creates an incentive for recipients to find and accept employment, even low-paying employment. See St. 1995, c. 5, § 110 (*d*), (*g*). Because under the statutory earnings disregard their TAFDC benefits are not reduced on a one-to-one basis for every dollar earned, employed recipients will have more spendable dollars than unemployed recipients, an incentive to find work. Conversely, wherever the earnings disregard does not apply, the recipient will not increase her spendable income at all by accepting employment until she can find work that alone pays more than the TAFDC benefits she would otherwise receive, creating a disincentive to accept low-paying or part-time work.

The department does not dispute that the statute expressly provides for application of the earnings disregard during the twenty-four month benefits period, even though the result is that recipients who have found employment that pays more than the amount of TAFDC benefits they would receive remain eligible for TAFDC benefits. See St. 1995, c. 5, § 110 (*d*), (*g*). See also 106 Code Mass. Regs. § 204.285. To justify the challenged financial eligibility test of 106 Code Mass. Regs. § 203.210(A), the department argues, however, that once the twenty-four months have expired and recipients have found work that pays more than the amount of benefits they would receive if

unemployed, there is no further need for transitional assistance and benefits should be cut off. Under the department's approach in § 203.210(A), beyond the twenty-four month period a recipient would realize that it made little *economic* sense actively to seek and accept employment that paid only a few dollars above her TAFDC benefit level. The department's approach embodied in the challenged regulatory provision is thus inconsistent with the statutory purpose of "structur[ing] financial and economic incentives and disincentives that promote" the "principles of . . . individual responsibility and self reliance" in the administration of TAFDC.[16] St. 1995, c. 5, § 110.

The department's position leads to particularly anomalous results now that it essentially concedes that the earnings disregard is to be applied to determine the level of benefits of those found eligible to receive an extension. As the plaintiffs point out, under this new approach, a recipient who was not working before reaching the time limit could obtain an extension, find a job one day later, and receive TAFDC benefits based on application of the earnings disregard. In contrast, applicants like the plaintiffs, who found work before the twenty-

---

[16]The department correctly points to the purpose of the Welfare Reform Act to encourage recipients to work rather than remain solely dependent on welfare assistance. But the statutory scheme created by the Legislature recognizes that TAFDC assistance should not be cut off at the point a recipient earns the equivalent to the modest benefits provided by TAFDC. See St. 1995, c. 5, § 110 (d), (g). Self-reliance may require an income greater than such minimal assistance, and the Legislature clearly provided that a nonexempt recipient could earn slightly more than twice his or her TAFDC benefit level before benefits would be completely terminated during the twenty-four month period. See id. The department apparently argues that without the elimination of the earnings disregard in determining financial eligibility for an extension, the transition to work "would continue indefinitely," in contravention of the purpose of welfare reform. We are unconvinced; with the earnings disregard in place, as soon as the recipient makes a little more than twice his or her TAFDC benefits, he or she would become financially ineligible to obtain extension benefits. See id. Thus, use of the earnings disregard creates a financial incentive to obtain employment, yet still provides a definite cutoff of assistance once a recipient's income climbs to a certain, though still low, amount. Use of the earnings disregard in the extension period therefore does not obstruct, but rather encourages, a transition to sufficient employment and complete self-reliance. The fact that the department has dropped its appeal of the court's ruling on 106 Code Mass. Regs. § 203.210(C) amounts to partial admission that use of the earnings disregard in the extension period is not inconsistent with the purpose of the statute. Other provisions of the Welfare Reform Act would also serve the purpose of encouraging recipients to find work, as the department admits.

four month period ran out could be denied an extension based on income counted without application of the earnings disregard, pursuant to the department's financial eligibility test in 106 Code Mass. Regs. § 203.210(A). The department's challenged regulation would thus disadvantage the very people who did everything possible to become self-sufficient within the first twenty-four months, as the plaintiffs rightly complain. For all these reasons we conclude that the challenged financial eligibility test of 106 Code Mass. Regs. § 203.210(A) is inconsistent with the statutory language and purpose of the Welfare Reform Act.

4. *Separation of powers*. We now examine whether the judge abused her discretion by issuing her injunctive orders of May 13, and May 20, 1999, as the department argues. See *Commonwealth* v. *Adams*, 416 Mass. 558, 566 (1993) (law leaves issuance and scope of equitable relief to sound discretion of trial judge); *Commonwealth* v. *Guilfoyle*, 402 Mass. 130, 135 (1988); *Johnson* v. *Martignetti*, 374 Mass. 784, 794 (1978). The department argues that these orders were an abuse of discretion, violating the separation of powers, because they dictated precisely how the department should comply with the law.

Where a court contemplates an injunctive order to compel an executive agency to take specific steps, it must tread cautiously in order to safeguard the separation of powers mandated by art. 30 of the Declaration of Rights of the Massachusetts Constitution. See *Charrier* v. *Charrier*, 416 Mass. 105, 110 (1993). Although injunctive as well as declaratory relief may sometimes be necessary to ensure that an agency will fulfil its statutory mandate, "it has been our practice to assume that public officials will comply with the law declared by a court and that consequently injunctive orders are generally unnecessary." *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, 400 Mass. 806, 825 (1987). See *Hoffer* v. *Commissioner of Correction*, 397 Mass. 152, 156 (1986), and cases cited. However, if the agency "fails to rectify the problems with its policies and procedures, a more specific order, detailing particular steps to be taken, [becomes] appropriate." *Correia* v. *Department of Pub. Welfare*, 414 Mass. 157, 170 n.14 (1993), citing *Massachusetts Coalition for the Homeless* v. *Secretary of Human Servs.*, *supra* at 823.

The question here is whether the injunctive orders of May 13 and May 20 were an abuse of the judge's discretion because she

did not allow the department sufficient opportunity to meet its statutory obligations, or were instead warranted because the department failed timely to rectify the impingements on rights caused by the impermissible regulations. In answering this question we are cognizant that time presses sharply on a family with children struggling against destitution. The judge's May 13, 1999, injunctive order reflected this concern about the speedy restoration of benefits wrongly denied to those living on the financial edge; she determined that this action was necessary both to avoid irreparable harm to the plaintiffs and to protect the public interest.

On April 20, 1999, the judge's summary judgment invalidated the financial eligibility test of 106 Code Mass. Regs. § 203.210(A), with final judgment entered on May 7, 1999. Significantly, she denied injunctive relief at that time. At the May 7 proceeding, she continued to proceed cautiously, informing the parties that she preferred not to get into directing the details of implementation. At that time the department was requiring those whose benefits had been wrongly terminated to complete a cumbersome eighteen-page form, if they had been told at all that they were entitled to reapply for benefits. From our review of the May 7 hearing transcript it is clear that the judge sought the prompt restitution of any benefits that had been improperly withheld, with the minimum of complexity for the recipients. She reminded the parties that the people involved were the "most vulnerable in our society . . . of limited, extremely limited, resources." It was clear from the colloquy that the judge recognized that unless benefits were restored expeditiously, the resulting harm to the families involved could be irreparable. The department did not object to the goals outlined by the judge. The judge took the motion for preliminary injunction under advisement, asked the parties to submit an agreement on implementation by May 11, 1999, and stated that she would make no decision then as to injunctive relief if the parties could arrive at an agreement. Nevertheless, the department failed to move expeditiously to restore benefits necessary to forestall critical harm to children.

On May 11, 1999, the department submitted an affidavit to the court outlining the steps it would take or had taken. The department apparently intended to disregard some of the concerns expressed by the judge on May 7. For example, the department's plan did not treat recipients improperly terminated

prior to April 20, 1999, "as if they were still entitled to benefits," but rather required them to submit a new application for TAFDC benefits, along with an application for an extension.

The judge finally issued an injunctive order May 13, 1999, as revised on May 20, 1999, ordering various steps for implementation of the April 20 decision. In general, compared to the department's implementation plans, the judge's order was geared toward getting notice out sooner, simplifying the process of obtaining a wrongfully denied extension, and unequivocally securing payment of benefits during the pendency of departmental review of an extension request should that take time. The injunctive order of May 13, 1999, was issued more than three weeks after the initial summary judgment decision. It was issued only after the department disregarded certain of the judge's cautions about the types of corrective measures necessary to forestall injunctive relief. At the time the order was issued, the department still had not notified many, if any, former recipients of the court's decision that they might now be eligible for the extension. Moreover, the department was apparently not planning to have all of the notices to these former recipients sent until May 25, 1999, more than a month after the judge's initial decision. Given the urgent needs of those served by TAFDC, the judge could reasonably have determined that sufficient opportunity for the department to exercise its own discretion in undertaking corrective measures here was properly measured in days, not weeks or months. We cannot conclude that the judge abused her discretion in ordering steps she could have found were necessitated by the department's "fail[ure] to rectify the problems with its policies and procedures, [such that] a more specific order, detailing particular steps to be taken, [was] appropriate." *Correia* v. *Department of Pub. Welfare*, 414 Mass. 157, 170 n.14 (1993). See *Blaney* v. *Commissioner of Correction*, 374 Mass. 337, 339, 342-343 (1978) (upholding judicial order mandating certain departmental measures; defendants had earlier been given "every opportunity" to comply with statutory provision).

For the foregoing reasons we deny the plaintiffs' motion to dismiss a portion of the appeal as moot. We affirm the entry of partial summary judgment in the plaintiffs' favor, invalidating 106 Code Mass. Regs. § 203.210(C) and the financial eligibility criteria in 106 Code Mass. Regs. § 203.210(A), and affirm

the injunctive order of the Superior Court issued May 13, 1999, and revised May 20, 1999.

*So ordered.*