McDonald, J.
The plaintiff, Linic Cruz (“Cruz”), has appealed, pursuant to G.L.c. 30A, §14, a decision of the Commonwealth of Massachusetts, Executive Office of Health and Human Services, Office of Medicaid (“Mass-Health”), which determined that Cruz is not eligible for a Personal Care Attendant (“PCA”) under the MassHealth program. Because the administrative record contains substantial evidence to support MassHealth’s decision, the defendant’s motion for judgment on the pleadings, pursuant to Mass.RCiv.P. 12(6), is allowed and the plaintiffs motion for summary judgment and motion for judgment on the pleadings are denied. The following facts are taken from the certified administrative record.
BACKGROUND
A. Cruz’s Condition
Since May of 2000, Cruz has been home-bound, suffering from paranoid schizophrenia. Cruz is on medication, and the family receives weekly in-home counseling. His aunt, who is his guardian, has always cared for him. When Cruz’s aunt returned to part-time employment, Cruz stayed home, alone, during the morning. On January 22, 2003, his physician-psychiatrist completed a patient referral form seeking a PCA for Cruz,[2] noting that he was “unable to manage daily living,” had twice been admitted to Providence Hospital in the preceding six months, and “currently has short-term intensive case management.” Cruz’s physician submitted the referral form to Stavros, a Mass-Health Personal Care Agency.[3]
Pursuant to regulations, Stavros conducted an in-home assessment[4] on March 13, 2003. In the assessment, it was noted that Cruz had previously threatened his brother with a knife, heard voices, and had a history of violent outbursts. Stavros requested PCA assistance for Cruz’s meals because he was “unsafe with knives,” and determined that he would also need a surrogate to manage the PCA for him. In its assessment, Stavros was called upon to describe Cruz’s ability to perform various daily activities as “independent,” “dependent,” or “physical assistance required.” Cruz was found to be “independent” for eating, feeding, and toileting but “dependent” for all other activities. None of his activities required physical assistance. The assessment explained that Cruz does not rise, dress, eat, groom himself, or take his medication without prompting and supervision. In addition, Cruz often resists performing these tasks. After completion, Stavros submitted the assessment, referral form, and an application for PCA services to Mass-Health on April 4, 2003. Cruz’s aunt, physician, and Stavros signed the application, which described the underlying reason for initiating the PCA request as “(c)ondition is worsening.”
B. The Decision of the Agency
MassHealth offers several different programs for chronically disabled members with mental impairments. For example, the Day Habitation Program, under 130 CMR419.000 etseq., provides supervision, medical care, developmental training and occupational therapy to members with severe, chronic disabilities that are (1) attributable to mental or physical impairments, (2) manifesting prior to age 22, (3) likely to continue indefinitely, and (4) result in functional limitations in such areas as self-care, self-direction, and economic self-sufficiency. Other programs example include the Home Health Agency Services, under 130 CMR 403.000 et seq., which provides skilled nursing and household support; the Medical Assistance Program, under 130 CMR422.000 etseq., which provides unskilled physical assistance and household support; and the Psychiatric Day Treatment Program, under 130 CMR 417.000 et seq., which provides specialized supervision, care, and therapy.
On May 1, 2003, MassHealth deferred Cruz’s application, with the following comments:
PCA not a mental health worker. Not appropriate] for s[upervision] of medication administration and outcomes. Member is in acute phase. Requires skills of psychiatric] nurse/VNA daily + HHAs.[5] Have day-hab services[6] been considered for oversight and supervision of the member’s medical needs? The Assessor’s signature is needed on page 5 of the evaluation with regard to the need for a surrogate. The Physician did not complete the limitations section on the Patient Referral Form. The Division requests a letter from the physician stating *170 that the member does not require the skilled services of a nurse for assessment and supervision.
The assessor’s signature was subsequently provided on May 23,2003, along with a letter from Stavros stating “[a]dditional information was requested from this consumer. We have not received anything. Please process the application as it is submitted.”
MassHealth denied Cruz’s application for PCA services on May 30, 2003. Cruz appealed the decision. An appeal hearing was conducted on October 15, 2003 with Cruz’s aunt, her attorney, an interpreter, Cruz’s uncle, and the hearing officer in attendance. MassH-ealth and Stavros representatives participated via telephone. The MassHealth representative restated and explained the agency’s denial, concluding “[i]t was the decision of this reviewer that Services of the PCA Program should be denied, and the member requires and is entitled to a higher level of service than the personal care attendant is able to provide.” The agency representative further explained, “. . . [MassHealth] feels that the member would benefit from the Skilled Services of a skilled psychiatric nurse for the needs he has, with his worsening condition, that ahorne — a PCA cannot provide.” The agency representative expressed an additional concern that “[t]he physician did not complete the limitations of his psychiatric needs. There was no Letter of Medical Necessity, as was requested, stating that he did not require Skilled Services, and there was no response on the question of medical day-hab.” The agency representative noted, “I’d like the doctor to explain . . . because all this documentation tells us his condition is worsening .. . A lot of times doctors use PCA and Home Health Aide back and forth to replace the way people use a nursing agency and a VA. They don’t always know the difference." After listening to the concerns of Cruz’s representatives, the hearing officer further explained, “A PCA is not somebody who is sort of guiding the person to do something he doesn’t want to do ... the member must be able to be self-directing ... A PCA is unlicensed and [the] member must be able to self-direct a PCA.” The hearing officer agreed to leave the record open for three weeks, to allow Cruz’s physician to provide the missing letter of medical necessity. Three weeks later, Cruz, through his attorney, wrote to the hearing officer that no additional evidence would be submitted. The decision of the agency was affirmed on December 2, 2003. Cruz then filed the instant action for judicial review of the agency’s decision pursuant to G.L.c. 30A, §14, alleging that the decision was not supported by substantial evidence, was contrary to agency regulations, and violated federal law.[7] Cruz seeks reversal of the administrative decision and moves for Summary Judgment on his claim under the ADA.
DISCUSSION
Cruz asserts that MassHealth’s decision to deny PCA services as inappropriate in his circumstances is unsupported by the evidence, which he argues clearly establishes his need for home services. He further asserts that, even if the regulations were correctly applied, they are contrary to law in that they violate the integration mandate of the ADA and the Rehabilitation Act of 1973 which seek to avoid institutionalization whenever possible. MassHealth counters that its decision is supported by substantial evidence that unskilled PCA services would be an inadequate, inappropriate level of professional care, given Cruz’s resistance, argumentative, and occasionally violent behavior toward caregivers, and his inability to self-direct the attendant. MassHealth asserts that skilled psychiatric nursing services, along with the accompanying home services in that program rather than the untrained PCA program, are necessaiy and constitute the proper standard of care for Cruz.
A party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Massachusetts Assoc. of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263 (2001); Coggin v. Massachusetts Parole Bd.., 42 Mass.App.Ct. 534, 587 (1997); Boston v. Outdoor Advertising Bd., 41 Mass.App.Ct. 775, 782 (1996), citing Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1996). A party can demonstrate a decision’s invalidity by showing, among other things, that it is contrary to law or is unsupported by substantial evidence. G.L.c. 30A, §14(7)(a)-(g). In reviewing the agency decision, the court is required to give due weight to the agency’s expertise, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. G.L.c. 30A, §14(7); Flint v. Commissioner of Public Welfare. 412 Mass. 416, 420 (1992). See Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997); Foxboro Harness, Inc. v. State Racing Comm’n., 42 Mass.App.Ct. 82, 87 (1997), rev. denied 424 Mass. 1107 (1997). The reviewing court may not substitute its judgment on questions of fact for that of the agency. Southern Worcester County Reg’l Vocational Sch. Dist. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982), quoting Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n., 372 Mass. 152, 154 (1977); Thomas v. Civil Service Comm’n, 48 Mass.App.Ct. 446, 451 (2000). “The approach is one of judicial deference and restraint but not abdication.” Amone v. Comm’r. of the Dept. of Social Services, 43 Mass.App.Ct. 33, 34 (1997), citing Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 572 (1996). The court determines whether the agency’s decision is arbitrary, capricious, or contrary to law. Tarin v. Comm’n. of the Div. of Med’l Assistance, 424 Mass. 743, 750 (1997). A party may not raise new claims on appeal if it did not also raise the claims at the administrative appeal. Aronoff v. Bd. of Registration in Medicine, 420 Mass. 830, 834 n.5 (1995).
*171 A. MassHealth Regulations Concerning PCAs
The court “must defer to the agency’s fact-finding role, including its right to draw inferences from the facts found.” School Committee of Brookline v. Bureau of Special Education Appeals, 389 Mass. 705, 716 (1983). Agency factual findings are accepted, so long as they are supported by substantial evidence. Commissioner of Rev. v. Jafra Cosmetics, Inc., 433 Mass. 255, 259 (2001). “Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.” Salaam v. Commissioner of the Dept. of Transitional Assistance, 43 Mass.App.Ct. 38, 39 (1997), citing G.L.c. 30A, §1. Moreover, absent clear error, the agency’s interpretation of its own rules is entitled to deference. Hurst v. State Ballot Law Comm’n, 428 Mass. 116, 120 (1998). Such an interpretation will be overturned “only if it is arbitrary, unreasonable, or inconsistent with the plain terms of the rule itself.” Massachusetts Auto Body Assoc. v. Commissioner of Ins., 409 Mass. 770, 781 (1991).
PCA services are provided if a member meets four criteria, described in 130 CMR 422.403(C), supra n. 3. MassHealth denied Cruz’s request under the fourth criteria, determining that PCA Services were inadequate for his health care.[8] Based on his history of violence, his current crisis status, his worsening condition, and his inability to self-initiate and direct daily tasks, MassHealth determined, and the hearing officer concluded, that Cruz required “skilled services in the form of a medical day hab program, visiting psychiatric nurse services and accompanying Home Health Aides.” Appeal Decision, page 12. An unskilled PCA could not meet the threshold level of medical necessity, defined under 130 CMR 450.204: “(B) Medically necessary services must be of a quality that meets professionally recognized standards of health care and must be substantiated by records including evidence of such medical necessity and quality.”
“Nothing in the record refutes the behavioral concerns of MassHealth in its determination that unskilled aides would be inappropriate for Cruz. In fact, these concerns were identified and described by Cruz’s physician and amplified in Stavros’s assessment. At the hearing, none of Cruz’s violent and resistant behaviors were disputed or questioned by his representatives. Even so, the hearing officer allowed three additional weeks for Cruz’s representatives to provide a clarifying (and previously requested) letter of medical necessity from a physician.[9] The letter was never produced.
In reaching its decision, MassHealth weighed the facts of Cruz’s circumstances and behavior toward others, as supported by the substantial evidence, against the requirement of an appropriate standard of professional care, and medical necessity. It is undisputed that Cruz needs in-home assistance while his aunt works from 6:30 a.m. to 1:30 p.m. It is also undisputed that Cruz would be unable to initiate, direct, or manage his own care. The issue between the parties is whether skilled psychiatric nurses or unskilled non-medical PCAs should provide the in-home care to Cruz. MassHealth concluded that Cruz required, and was entitled to, skilled nursing services, rather than the unskilled services which he sought. This conclusion was based on a determination that unskilled services could not meet the level of professional care medically necessary for Cruz. MassHealth’s actions were neither arbitrary, capricious, nor contrary to its regulations. Additionally the hearing officer did not act outside the scope of authority granted to her by statute and regulation. 130 CMR 610.654(A). Cruz received adequate notice and opportunity to be heard by MassHealth and to provide the required and requested documentation of medical necessity. Accordingly, he was afforded due process and cannot claim any constitutional infirmity in the MassHealth determination of his eligibility for PCA services.
B. The ADA and PCAs
The Americans with Disabilities Act (ADA) provides, in relevant part, that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. §12132. See also 28 C.F.R. §35.130. A “qualified individual with a disability” is:
an individual with a disability who, with or without reasonable modification to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
42 U.S.C. §12131(2); 28 C.F.R. §35.104. Furthermore,
A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability— . . . (iv) provide different or separate aides, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others.
28 C.F.R. §35.130(b) (1) (iv).
The plaintiff must prove three elements to prevail on his ADA claim:
(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity’s services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) *172 that such exclusion, denial of benefits or discrimination was by reason of the plaintiffs disability.
Darian v. Univ. of Massachusetts Boston, 980 F.Sup. 77, 84 (D.Mass. 1997), citing McDonald v. Commonwealth of Massachusetts, 901 F.Sup. 471, 478 (D.Mass. 1995).[10]
There is no exclusion from home care services. MassHealth is not denying the benefits of a home care program, but substituting medically skilled attendants who are better qualified to handle Cruz’s resistant and potentially violent reaction to his caregiver. MassHealth is providing alternatives' to institutionalization for Cruz. A court may not displace an ad-minstrative agency’s choice between two conflicting views, even if the court would justifiably have made a different choice had the matter come before it de novo. Zoning Board of Appeals of Wellesley v. Housing Appeals Committee, 385 Mass. 651, 657 (1982), citing Universal Camera Corp. v. Nat’l. Labor Rel’ns Bd., 340 U.S. 474 (1951); Labor Reins. Comm’n v. Univ. Hosp., Inc., 359 Mass 516, 521 (1971).
ORDER
For the foregoing reasons it is hereby ORDERED the defendant’s Motion for Judgment on the Pleadings shall be and is ALLOWED and the plaintiffs Motion for Summary Judgment and Motion for Judgment on the Pleadings shall be and are DENIED.

PCAs are unskilled aides who provide hands-on assistance to eligible MassHealth members who can self-direct their own care and who could normally perform certain specified tasks but for a physically disabling condition, PCAs assist the member to “. . . achieve independent living.” 130 CMR 422.402. The Personal Care Program “does not cover” ... “assistance in the form of cueing, prompting, supervision, guiding, or coaching . . .” 130 CMR 422.412(C). PCAs are unskilled aides who are managed, trained, and directed by the MassHealth member, himself, under the Medical Assistance Program. 130 CMR 422, 402, 130 CMR 422.411(A)(1).

Under 130 CMR 422, 403(C), “[MassHealth] covers personal care services provided to eligible MassHealth member who can be appropriately cared for in the home when all of the following conditions are met:
(1) The personal care services are prescribed by a physician or a nurse practitioner who is responsible for the oversight of the member’s health care.
(2) The member’s disability is permanent or chronic in nature and impairs the member’s functional ability to perform [certain daily tasks] without physical assistance.
(3) The member, as determined by the personal care agency, requires physical assistance with two or more of the [listed daily tasks].
(4) [MassHealth] has determined that the PCA services are necessary and has granted a prior authorization medically for PCA services.

fyhe Personal Care Agency “must conduct a written assessment of the member’s capacity to manage PCA services independently.” 130 CMR 422.422(A). This assessment ensures “the member’s ability to manage PCA services and to function as an employer of PCAs” or, in the alternative, identifies the need for a surrogate to be present and manage the PCAs for him.

“VNA” refers to Visiting Nurses and “HHAs” to Home Health Aides. Both provide nursing services under the Home Health Agency Program. 106 CMR 403.000 et seq.

“[D]ay-hab” refers to the Day Habilitation Program. 106 CMR 419.000 etseq.

Specifically, plaintiff alleges violation of “the Medicaid Act, the Americans with Disability Act (hereinafter ‘ADA’) and the Rehabilitation Act.” Pi’s Memorandum at 2. Plaintiff also seeks costs and attorneys fees pursuant to 42 U.S.C., §1988, 42 U.S.C., §12205, and 28 U.S.C., §794. Pi’s Memorandum at 15.

MassHeaIth noted that Cruz also did not meet the third criteria (“The member, as determined by the personal care agency, requires physical assistance with two or more of the [listed daily tasks”]). Stavros, the personal care agency, determined through its in-home assessment of Cruz that he did not require physical assistance for any of these tasks. See pages 2-3, above. Cruz’s doctor, in his patient referral form, noted no physically disabling conditions and no sensory, cognitive, or psychiatric disabling conditions. At the hearing, Cruz’s representatives did not dispute either his physician’s or Stavros’s findings.

Plaintiff refers to a letter, dated August 3, 2003, not on the physician’s letterhead, which was presented to the hearing officer. Although this letter includes the term “medically necessary,” it does not address Cruz’s medical need for PCA services but, instead, refutes an allegation that Cruz seeks PCA services for “social reasons.” There is no record of such an allegation.

The necessary elements to prevail on a claim for violation of Section 504 of the Rehabilitation Act are similar. Dorian, 980 F.Sup. at 84-85. See also 42 U.S.C. §12133.